[Crim. No. 4525. First Dist., Div. Three. Feb. 21, 1964.]

In re BOBBY PATTON on Habeas Corpus.

Bobby Patton, in pro. per., and Clarence A. Linn, under appointment by the District Court of Appeal, for Petitioner.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Edward P. O'Brien, Deputy Attorneys General, for Respondents.

DEVINE, J.—Petitioner asked a writ of mandate to compel the Adult Authority and the warden of the state prison in which he is incarcerated to effect his immediate release. Upon appointment of counsel on his behalf, the petition has been altered to one for habeas corpus, respondents have regarded it as such, and so do we.

The facts are these: On January 23, 1959, petitioner was convicted, on plea of guilty, of violation of section 4532, subdivision (a), of the Penal Code (escape without violence from an industrial farm). The offense was then punishable by a term of six months to five years in state prison. On January 29, 1959, petitioner was delivered to custody of the Department of Corrections. His maximum term, therefore, would expire January 28, 1964.*

On October 19, 1959, Adult Authority fixed his term at two and a half years, and granted parole effective December 11, 1959. On September 1, 1960, while he was on parole, petitioner was arrested for an offense, for which he served a term in the county jail in Los Angeles. The sentence was not

*Perhaps six days, "dead time," for reasons irrelevant here, would be added.

made to run consecutively with the state prison sentence, nor was it expressly made to run concurrently.

On August 25, 1960, the Adult Authority took this action: "Parole suspended *and return to prison ordered* for the causes set forth in the attached Board Report with the understanding that if the Court deems a county jail sentence sufficient for the current offense, the Adult Authority will again consider the matter at the termination of said jail sentence for possible reinstatement on parole." (Italics supplied.)

On June 30, 1961, the Adult Authority again acted on petitioner's parole: "Reinstate on parole as of 6-29-61. Term refixed at 3½ years to extend period of parole supervision." (Term as refixed would expire July 21, 1962.)

On August 17, 1961, this action was taken: "Parole cancelled—return to prison ordered for the reasons set forth in the report of which this order is a part. (Term refixed at maximum in accordance with Resolution adopted 3-6-51.)"

Respondents have set petitioner's current release date as December 9, 1964, which is about 10½ months later than the date of the original maximum sentence.

 The question is: May the Adult Authority disregard the time served by a parolee in a county jail when the judgment sentencing the parolee was not made to run consecutively with the state prison sentence then being served, and when the Adult Authority ordered the prisoner returned to the state prison but did not execute its order, and may the Authority then extend the release date of the state prison sentence beyond its original date of maximum sentence?

Section 3064 of the Penal Code provides: "From and after the suspension or revocation of the parole of any prisoner and until his return to custody he shall be deemed an escape and fugitive from justice and no part of the time during which he is an escape and fugitive from justice shall be part of his term."

Section 669 of the same code provides: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or whether the imprisonment to which he is or had been sentenced upon the second or other subsequent conviction shall

commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be; provided, however, if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term. In the event that the court at the time of pronouncing the second or other judgment upon such person had no knowledge of a prior existing judgment or judgments, or having knowledge, fails to determine how the terms of imprisonment shall run in relation to each other, then, upon such failure so to determine, or upon such prior judgment or judgments being brought to the attention of the court at any time prior to the expiration of 60 days from and after the actual commencement of imprisonment upon the second or other subsequent judgments, the court shall, in the absence of the defendant and within 60 days of such notice, determine how the term of imprisonment upon said second or other subsequent judgment shall run with reference to the prior incompleted term or terms of imprisonment. Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently.

"The State Board of Prison Directors shall advise the court pronouncing the second or other subsequent judgment of the existence of all prior judgments against the defendant, the terms of imprisonment upon which have not been completely served."

The Attorney General contends that petitioner's parole was suspended between August 25, 1960, and June 29, 1961, and that during this period he was absent from the state prison and is to be deemed an escape.

Respondents further contend that petitioner could have compelled his own return to state prison by legal process, but failed to do so, and thus was out of the actual or constructive custody of the prison authorities.

Petitioner contends that the effect of the combined action and inaction of the state authorities will, unless this court grants him relief, operate to impose consecutive sentences upon him, although the court's sentence to the county jail was not made to run consecutively, and, therefore, was a concurrent sentence.

We agree with petitioner's contention. There are old cases which would support respondents' position if the law were the same as it was when they were decided, namely, *In re Forbes*, 108 Cal.App. 683 [292 P. 142] (1930), *In re Daniels*, 110 Cal.App. 638 [294 P. 735] (1930); and *In re Sommers*, 135 Cal.App. 541 [27 P.2d 649] (1933, but applicable law was that prior to 1931). A great change was made in the law relating to dual sentences in 1931. The history of section 669 is given in *In re Radovich*, 61 Cal.App.2d 177, 179, 180 [142 P.2d 325]. From 1927 until 1931, sentences ran consecutively unless the court ordered that they run concurrently. Since 1931, the reverse holds true. ▮ Unless the court directs consecutive sentences, the sentences are concurrent. The cases cited above were decided when consecutive sentences were the rule. It was the duty of the prisoner during that four-year period to make known to the court which was about to impose sentence that he was subject to commitment to the state prison. The court then might "in exceptional cases" make the sentence concurrent. (*In re Daniels, supra,* at p. 640.) Under section 669 as it has read at all times relevant to Patton's case, it has been the duty of the State Board of Prison Directors to advise the court pronouncing the second or subsequent judgment of all prior judgments terms of which have not been completed. Thus, the court may be in position to decide, on hearing whatever is put before the judge by the district attorney and the prisoner, whether the new sentence shall be concurrent or consecutive.

▮ Obviously, if respondents' position is sustained, in the case before us, the effect will be that of consecutive sentences although the court's sentence was a concurrent one, by operation of section 669.

Respondents argue, however, that under section 3064, petitioner is not entitled to have the jail time counted because, although his parole had been suspended, he had not returned to custody of the state prison authorities.

Of course, he could not have gone back to prison on his own without incurring another escape charge. But, says the Attorney General, he could have instituted legal proceedings to have compelled his return to the prison (*In re Forbes, supra,* 108 Cal.App. 683; *In re Stoliker*, 49 Cal.2d 75 [315 P.2d 12]), and, say respondents, petitioner was obliged to do this if he wished to get credit for his time.

This seems to have been the rule in the brief period when sentences were consecutive unless they had been made con-

current, at least in such consecutive cases. (*In re Forbes, supra.*) If we attribute to a prisoner the sophistication to know that he is entitled to be returned to prison (a rather fictional assumption), we must impute to him similar sophistication to know that the court has caused, by act or omission, his new sentence to run concurrently with the old, since the 1931 change in section 669. With this knowledge, he would deem it unnecessary to file a petition for a writ to compel reentry to prison.

Besides, the Adult Authority, knowing where petitioner was, in jail, had actually *ordered* that he be returned to the prison, but did not execute its own order. It would seem that if the sentences were not to run concurrently, it would be the duty of the sheriff to deliver the prisoner at once, and of the prison authorities to see to it that he did. (See 38 Ops.Cal. Atty.Gen. 132; Pen.Code, § 3001; *Ex parte McGuire*, 135 Cal. 339 [67 P. 327, 87 Am.St.Rep. 105].) Respondents answer that the order was not an outright order of return, because it had the qualifying language that the order is ''with the understanding that if the Court deems a county jail sentence sufficient for the current offense, the Adult Authority will again consider the matter at the termination of said jail sentence for possible reinstatement on parole.'' But return to prison was either ordered or it was not ordered. Apparently, what the Authority was trying to do was to *say* that petitioner was ordered returned, but to abstain from effectuating the order, to suggest to the court a county jail sentence, and to hold before petitioner the possibility of further release on parole, possibly to be made retroactive. With this before him, petitioner would hardly insist that the order be executed. He might well assume that under section 669 as it now stands, and as it has been since 1931, his prison sentence was running concurrently with his jail sentence.

The Adult Authority does not have jurisdiction to determine whether a second sentence shall be consecutive or concurrent. This is a judicial function, clearly set out in section 669. (*In re Radovich, supra,* 61 Cal.App.2d 177, 179.)

Although the Authority has not specifically asserted such jurisdiction, the effect of the procedure here, because petitioner's term has been fixed at maximum, has been to make the sentences consecutive. The unexecuted order was tantamount to a suspension of the prison sentence at the discretion of the Adult Authority. This, we believe, constitutes constructive custody, for the period of which the prisoner is entitled to credit. (We believe that the intention of

the Authority probably was to favor petitioner at that time, but this does not diminish his rights. Nor is it relevant that after resumption of parole, petitioner probably brought about revocation of it by some conduct of his own. What this was, we do not know. He has been punished for whatever his misconduct was by extension of his term to maximum and by recapture to prison.)

Respondents cite *In re Payton*, 28 Cal.2d 194 [169 P.2d 361] (1946) as a case subsequent to the major amendment of section 669, in which the court held that a period of 35 days between suspension of the prisoner's parole and his return to prison must be added to the period of his sentence (p. 196). In the *Payton* case, however, there was no order of the Board of Prison Terms and Paroles directing return to the state prison accompanying the suspension; the order of suspension was preliminary in nature, pending investigation of the charge (p. 197); and even before the board, upon full investigation, affirmed its preliminary order of suspension, the prisoner was returned to the state prison. Payton was held by the local authorities pending further order by the board, and although during part of the time he was serving a misdemeanor sentence, there is nothing in the case to show the duration of this sentence, and no point was made in the case of application of section 669.

■ If there is conflict between section 3064 and section 669, it should be resolved on the principle that the interpretation most favorable to the prisoner or defendant is to be accepted. (*People* v. *Rodriguez*, 222 Cal.App.2d 221 [34 Cal. Rptr. 907]; *People* v. *Smith*, 44 Cal.2d 77, 79 [279 P.2d 33]; *People* v. *Ralph*, 24 Cal.2d 575, 581 [150 P.2d 401]; *People* v. *Holtzendorff*, 177 Cal.App.2d 788, 795 [2 Cal.Rptr. 676].)

■ The interpretation most favorable to petitioner, that of giving full recognition to section 669, would seem to be in this case, also the most orderly and the best adapted to a fair, judicial determination of the rights of the prisoner and of the People. At the time of the second sentencing, the law provided for informing the judge of the prior sentence. (Pen. Code, § 669, last sentence.) The district attorney has opportunity to present to the judge his recommendation for consecutive sentences, if he believes this should be the disposition. (See 38 Ops.Cal.Atty.Gen. 133, last sentence.)

The prisoner, too, about to be sentenced, and his counsel may present their reasons for concurrent sentences. Perhaps a probation officer's presentence report is to be had. All of

the considerations which enter the judicial scale are to be balanced, including the seriousness of the offenses. (In the present case, it is possible that the judge considered that shortly after petitioner's original sentence in 1959, the maximum term for his offense [Pen. Code, § 4532, subd. (a) ] was reduced by the Legislature to one year and one day.) Then the judge decides how the terms shall run, knowing that if he says nothing, they will run concurrently. If the terms are made to run concurrently, by express statement or by operation of law, they are to be concurrent in fact.

If this, a literal following of section 669 in this case, conflicts with a literal interpretation of section 3064, we believe it is to be preferred as the more judicial procedure, the one better suited to protect the rights of all than the other one with its dubious order, its designation of a man in actual and known custody as an ''escape,'' its requirement of initiative by the prisoner, an initiative difficult for the prisoner to know the need of, and rather an unnatural one, anyway, and its imposing of 'consecutive sentences in fact where in law they were declared concurrent.

The writ is granted and the petitioner is ordered released from custody forthwith.

Draper, P. J., and Salsman, J., concurred.