James C. HAMILTON, Appellant,

v.

Hugh SALTER, United States Marshal for
the Eastern District of North
Carolina, Appellee.

Cecil HAMILTON, Appellant,

v.

Hugh SALTER, United States Marshal for
the Eastern District of North
Carolina, Appellee.

Nos. 10433, 10434.

United States Court of Appeals
Fourth Circuit.

Argued April 5, 1966.

Decided May 12, 1966.

F. Kent Burns, Raleigh, N. C., for ap-
pellants.

Gerald L. Bass, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and BUTZNER, District Judge.

PER CURIAM:

By petitions for habeas corpus, James C. Hamilton and Cecil Hamilton sought release in the United States District Court for the *Eastern* District of North Carolina from the custody of its Marshal. They are held under Federal sentences ordered to be served concurrently with prior State sentences. They did not ask for permanent discharge, but only to be let to bail pending a final determination upon the State sentences now stayed on applications for certiorari to the United States Supreme Court. Petitioners' fear is that if they begin service of the Federal sentences before the inception of the State sentences, the result will be the partial service of the Federal and State sentences separately and consecutively which, they say, is contrary to the intent of the Federal sentences.

The petitions were denied and dismissed, and on appeal we affirm. However, to avoid any misconception of the effect of our decision, we deem it advisable to recount the prior proceedings. They are best outlined by the District Judge in his findings as follows:

"1. That on July 1, 1964, petitioners were sentenced to a term of 20–25 years in the North Carolina State Prison, at Raleigh, within the Eastern District of North Carolina.

"2. That on November 18, 1964, petitioners were brought before the United States District Court for the *Western* District of North Carolina upon a Writ of Habeas Corpus Ad Prosequendum at which time they pled guilty to conspiracy to violate Title 18, United States Code, Sections 500, 541, 1707 and 2115. As to both petitioners, judgment was as follows:

" 'It is ADJUDGED that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of FIVE (5) YEARS. This sentence to run concurrent with State Sentence now serving.'

"Following this sentence, petitioners were returned to the custody of the North Carolina Prison Department.

"3. On December 23, 1964, petitioners were released upon $10,000 bail pending review of their state convictions by the North Carolina Supreme Court.

"4. On January 8, 1965, petitioners were taken into federal custody upon order of January 6, 1965 of the United States District Court for the *Western* District of North Carolina to serve the five year federal sentence imposed by that Court. Thereafter, upon affirmance of the state sentence by the North Carolina Supreme Court, petitioners were returned to the North Carolina State Prison. On May 27, 1965, an order was issued by Associate Justice Clifton L. Moore staying the state sentence of imprisonment and setting appeal bond for petitioners pending application for writ of Certiorari to the United States Supreme Court, which application is still pending.

"5. On December 7, 1965, petitioners remained in confinement at Central Prison in spite of the aforesaid order and filed on that date a petition for habeas corpus directed against the Warden of the North Carolina Prison.

"6. On December 13, 1965, petitioners were released on bond posted pursuant to said order of the North Carolina Supreme Court, and in compliance to the federal detainers theretofore filed they were delivered to the custody of the United States Marshal for the *Eastern* District of North Carolina, respondent in the instant action and are presently confined in the Wake County Jail within the *Eastern* District of North Carolina." (Accents added.)

The apprehension of the petitioners is not without basis. It is quite

possible, as already noted, that subsequent events can deprive them of the advantage the criminal judgments and commitments by the Federal court were intended to confer, i. e. that service under the State sentences would be credited on the Federal terms. Nevertheless, in our opinion the Federal detentions here are altogether valid.

█ The provision for concurrent service was not permissible under the Federal law, 18 U.S.C. § 4082. It was in effect a designation by the Court of the place of confinement, a matter confided by the statute exclusively to the discretion of the Attorney General. The stipulation for concurrent service, therefore, must be ignored as surplusage and the 5-year sentence held unaffected by this direction. Bateman v. United States, 277 F.2d 65, 69 (8 Cir. 1960); Montos v. United States, 261 F.2d 39 (7 Cir. 1958). In practice the sentencing court in the order of commitment frequently recommends a place for the convict's detention. However, while it is generally followed by the Attorney General, it is only a recommendation and not an order of the court.

█ For these reasons, doubtlessly, the petitioners have not attacked the Federal sentences, and also because, we assume, they realize that no jurisdiction exists in habeas corpus in the Eastern District Federal Court to postpone or otherwise modify the Federal sentences. If the pleas of guilty were entered or the sentences were passed in the Federal court on a misunderstanding of the effect of the concurrency provision, relief on those premises can be sought only by motion in the sentencing court under 28 U.S.C. § 2255. Of course our ruling does not foreclose that step.

On such a motion under 28 U.S.C. § 2255, the trial court could inquire if the pleas were tendered on the understanding or under the impression that the sentences would run along with the State imprisonment. If the court should so find, it should then vacate the sentences, and, if requested, allow the entry of pleas of not guilty to be followed by trials.

In the event a change of plea is not asked, the court could accomplish the aim of concurrent sentences by enlarging the appellants on bail until the State convictions are finally reviewed, and then pass appropriate judgments. If the State sentences are not disturbed, the District Judge could suspend imposition or execution of sentence in order to avoid multiple or consecutive detentions under the Federal and State laws. If the State sentences are vacated, the District Judge would then determine whether any sentences should be passed in view of the State prosecutions, or if passed, whether the conditions or length of them should reflect a consideration of the State proceedings.

Affirmed.