[Civ. No. 23087.   First Dist., Div. Three.   Dec. 12, 1966.]

ANTONIO AGUILERA, Plaintiff and Respondent, v. CALI-
FORNIA DEPARTMENT OF CORRECTIONS et al.,
Defendants and Appellants.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr.,
Assistant Attorney General, Edward P. O'Brien and Don
Jacobson, Deputy Attorneys General, for Defendants and
Appellants.

Cominos, Shostak & Epstein and Eugene Epstein for Plain-
tiff and Respondent.

DRAPER, P. J.—This appeal presents questions of the extent to which a parole violator's time in county jail may be added to his maximum prison term. While difficult, the issue is hardly pressing in this case. Aguilera entered prison December 20, 1958, under concurrent sentences for a term of 1-25 years. Thus the Adult Authority now can hold him at least until late 1983. Only at that distant date can the 55 days here in issue affect either Aguilera or the authority. But the state chose to raise the issue now, and we must determine the appeal.

On August 1, 1962, after Aguilera had spent some 17 months on parole, his parole was cancelled and his return to prison ordered by the Adult Authority (Pen. Code, §§ 3056, 3060). He was arrested in Santa Clara County August 8 and was held in jail there under the authority's order and on charges of misdemeanor traffic violations. He was convicted of the traffic violations and sentenced to county jail for terms totaling 72 days, all to run concurrently with his prison sentence. He was not returned to prison until 19 days after expiration of those terms. In 1963, he was again paroled and his parole was again cancelled. This time he was held 7 days in jail before being returned to prison.

He sought mandate, asserting that his total of 127 days in county jail be deemed served upon his prison sentence. The superior court agreed and issued peremptory writ. The state concedes that the 72 days served in jail under the misdemeanor convictions cannot be added to his prison term, since those sentences were to run concurrently with it. The concession is required (*In re Patton*, 225 Cal.App.2d 83 [36 Cal.Rptr. 864]). It appeals, however, from that portion of the judgment which refuses to add to the prison term the remaining time, some 55 days, served in county jail (a) awaiting trial on the misdemeanor charges, (b) awaiting return to prison after completion of the misdemeanor sentences, and (c) pending return to prison after the 1963 arrest.

A prisoner lawfully on parole remains technically in custody (Pen. Code, § 3056), and is serving his sentence, although not in physical custody (*Ex parte Casey*, 160 Cal. 357 [116 P. 1104]). The Adult Authority may, for cause (Pen. Code, § 3063) suspend or revoke parole, and order the parolee returned to prison (Pen. Code, § 3060).

He then becomes "an escape and fugitive from justice" and ceases to serve his term "until his return to custody"

(Pen. Code, § 3064). The section does not specify whether the custody which reinstates running of time on a prison term must be literally within the prison walls, or in another penal facility pending return to prison. That is the question we must determine.

Neither counsel nor we have found any direct holding upon this issue. Language of one decision speaks of "return to state prison" as ending the fugitive status (*In re Payton*, 28 Cal.2d 194, 196 [169 P.2d 361]). But there the sole issue was the sufficiency of the order suspending parole, and as has been pointed out (*In re Patton, supra,* 225 Cal.App.2d 83, 89) that order did not direct the parolee's return to prison. Appellants quote from a recent decision (*In re Hall*, 63 Cal.2d 115, 117 [45 Cal.Rptr. 133, 403 P.2d 389]) that "the time between a valid order of suspension and his actual return to state prison is not credited to his term." But the parole there had been cancelled because of the parolee's conviction of another felony while on parole. That judgment was reversed, and on retrial he was acquitted. The holding of *Hall* is that acquittal on the only charge supporting the suspension required the Adult Authority to vacate its order, and to count "on either the prison or parole time" his period in jail pending and during trial. The language now quoted by the Attorney General in effect states the maximum "dead time" which could be claimed, a claim wholly rejected by the court. The issue confronting us was neither raised nor decided either in *Payton* or *Hall.*

Lacking direct decisional authority, we may look to opinions of the Attorney General. That office has ruled that a county or city jail "becomes the public prison of the state" (14 Ops. Cal. Atty. Gen. 162, 169) and specifically is so when used by a state parole officer in transferring a parolee from constructive to actual custody (39 Ops. Cal. Atty. Gen. 301; see also 7 Ops. Cal. Atty. Gen. 248). True, another opinion (15 Ops. Cal. Atty. Gen. 53) contains the caveat that "time spent in local places of confinement awaiting return to the State prison after suspension of parole, . . . cannot be computed as part of the sentence" (p. 56). That opinion's effect here, however, is weakened by its insistence that delay in transfer to prison "should not be unreasonable in length." (P. 56.)

Here, the authority's order directed Aguilera's return to prison. It permitted no delay. He was arrested and detained within a short distance of the prison from which he had been

paroled. Appellants make no suggestion that he could not readily and reasonably have been returned to prison on the day of his arrest.

If petitioner had been arrested and jailed solely under the authority's unequivocal order directing his return to prison, he should have been delivered there with all reasonable promptness. The county officers were required by law to execute the order for return (Pen. Code, § 3061). They were agents of the authority (see 19 Ops. Cal. Atty. Gen. 160). Thus delay could be chargeable solely to the authority. Absent any showing of reasonable ground for delay, we would be unable to find any basis upon which it could extend Aguilera's prison term by deliberately holding him in custody in a county jail solely under such order.

If, on the other hand, there were no authority order for return to prison, and Aguilera had been held in jail only on the misdemeanor charges, there would be no interruption of parole and no question of adding time to his term would arise.

Here, however, he was held in jail under both the authority order and the misdemeanor charges. We look, then, to the effect of the order upon his status as a charged misdemeanant. On the traffic charges, he was entitled to admission to bail as a matter of right pending trial (Pen. Code, § 1271) or even on appeal (Pen. Code, § 1272). ■ But one awaiting return to prison upon cancellation of parole is not bailable. If already free on bail on other charges, he will be reincarcerated upon such cancellation (31 Ops. Cal. Atty. Gen. 136). To this extent, the authority's order substantially contributed to the detention of Aguilera in jail. Moreover, county officers could not have held him in jail in defiance of the order for his return to prison (see *Ex Parte McGuire*, 135 Cal. 339 [67 P. 327, 87 Am.St.Rep. 105]). Thus his return could be delayed only because the authority consented.

So long as his parole remained unsuspended, each day counted on his prison sentence and brought one day closer the expiration of its maximum. Upon his return to prison on order of the authority, each day counted upon his term. It is only the period between the order and his actual "return to custody" that fails to constitute service of his term, and this because he is "an escape and a fugitive from justice." This period is, in effect, added to his term (Pen. Code, § 3064).

■ But when he was jailed by an officer acting expressly under the authority's order, he was effectively held in actual

custody. His return to prison was delayed solely because the authority consented to his detention in jail. We are unable to say that he has not been returned to custody within the meaning of section 3064. We entertain no sentiment for Aguilera. We do note, however, that the authority's twice releasing him on parole (and doing so twice more since the 1963 cancellation), indicates that it has no fear of his constituting a menace to others. That body obviously feels that rehabilitation remains likely.

As indicated, we do not meet the problem of reasonable delay in his return to the nearby state prison, since there is no suggestion that he could not have been returned there immediately. Nor do we deal with one transferred from prison for trial or as a witness (Pen. Code, §§ 2620, 2621, 2900).

Judgment affirmed.

Salsman, J., and Devine, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 8, 1967.

---

*Assigned by the Chairman of the Judicial Council.