[Crim. No. 11705. In Bank. Oct. 3, 1968.]

In re DANIEL JOHN YUTZE on Habeas Corpus.

Daniel John Yutze, in pro. per., and Robert N. Beechinor, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Michael J. Phelan, John F. Henning, Jr., and John T. Murphy, Deputy Attorneys General, for Respondent.

BURKE, J.—The question presented is whether Daniel John Yutze is entitled to credit on his 1956 California prison sentence for the time he served in federal institutions under a 1963 federal sentence.

The Department of Corrections (hereafter called the Department) did not give Yutze such credit and without it his discharge date was February 1, 1968. Less than one month before that date, namely on January 11, 1968, we issued an order to show cause and ordered him released from San Quentin on his own recognizance.

In 1956 Yutze pleaded guilty to unlawful possession of narcotics (maximum term 10 years; Health & Saf. Code, § 11500) and was sentenced to prison. On November 7, 1956, he began serving the sentence. Subsequently, on repeated occasions, he was released on parole, his parole was suspended and his return to prison ordered, and his term was fixed at the maximum.[1]

One of the occasions he was paroled was in 1962. There-

[1]In 1959 Yutze was paroled. On December 16, 1960, his parole was suspended, his return to prison was ordered, and his term previously fixed

after, on July 11, 1963, the Adult Authority suspended his parole, ordered his return to prison, and refixed his term at the maximum. He was arrested on August 14, 1963,[2] and remained in "local confinement" from that date until January 7, 1964.[3] He apparently was held in such confinement under the Adult Authority order and also on a federal charge of importing narcotics without payment of a tax (26 U.S.C. § 4724(a); see Pen. Code, § 4005). According to the Department, the period he remained at large after July 11 (1 month and 3 days) was computed as "dead time," but the time he was in "local confinement" (4 months and 23 days) was credited to his sentence.

On December 23, 1963, Yutze pleaded guilty in a United States District Court to the federal charge and was committed to the custody of the United States Attorney General for two years. The judgment recommended that Yutze be sent to a public health service hospital for treatment for narcotic addiction and further recommended that "if state parole is revoked, the Director of the Bureau of Prisons, if possible, assign [Yutze] to state institution in order that sentences may run concurrently."

On January 7, 1964, Yutze was transferred to a Public Health Service Rehabilitation Center in Texas. He underwent treatment there until June 1964, when he was taken to a federal prison in California. A detainer was lodged by California with federal authorities.

---

at five years was refixed at the maximum. He was returned to custody that same day.

In 1962 he was again paroled. The ensuing events relating to this parole and his return to prison are set forth in the body hereof.

In 1965 he was again paroled. On December 16, 1966, his parole was suspended and his return to prison ordered. He was taken into custody on December 21, 1966. The time he was at large (5 days) was computed as "dead time." (Pen Code, § 3064.)

In March 1967 he was reinstated on parole. On July 7, 1967, his parole was suspended and his return to prison ordered. He was taken into custody on August 17, 1967. The time he remained at large (1 month and 9 days) was computed as "dead time." His parole was cancelled on August 25, 1967, and further parole consideration was denied.

[2]The return states that Yutze was arrested on "July 7, 1963," and, according to Yutze, "in July of 1963 his parole was suspended and he was arrested for a federal violation." However, exhibits presented by the Attorney General ("Sentence Data Record" relating to Yutze's federal conviction and a Department memorandum) state that Yutze was arrested on August 14. 1963, and the Department memorandum shows that he remained at large from July 11, 1963, until August 14. Thus, if he was arrested on July 7, he apparently was released before July 11.

[3]According to Yutze, he was in jail in Imperial County and San Diego County during that period.

In July 1964 the Adult Authority cancelled Yutze's parole. In October 1964, in response to a letter from the United States Department of Justice, the California Director of Corrections wrote, ". . . we will accept custody of . . . Yutze for concurrent service of his State and Federal sentences upon his delivery to our custody by your officer. . . ."

On January 14, 1965, Yutze was released to the custody of the Department, and in March 1965 his parole was revoked.

■ The Department properly did not give Yutze credit on his California sentence for the time he served in federal institutions (1 year and 7 days). ■ A prisoner on parole remains under the custody of the Department (Pen. Code, § 3056) and is serving his sentence although not confined in prison (*Ex parte Casey,* 160 Cal. 357, 358 [116 P. 1104]; *Aguilera* v. *California Dept. of Corrections,* 247 Cal. App.2d 150, 151 [55 Cal.Rptr. 292]). However, "From and after the suspension or revocation of the parole of any prisoner and *until his return to custody* he shall be deemed an escape and fugitive from justice and no part of the time during which he is an escape and fugitive from justice shall be part of his term" (Italics added; Pen. Code, § 3064.)

■ Assuming for the moment that Yutze's "local confinement" from August 14, 1963, until January 7, 1964, has no effect upon whether he should receive credit on his California sentence for the period he was in federal institutions, it seems clear that under the quoted section he was not entitled to such credit but must be deemed a "fugitive from justice" during that period. ■ As we shall see, "custody," as used in that section, does not include confinement in federal institutions under a federal judgment of conviction.

The return points out that a federal court's recommendation that a federal sentence run concurrently with a prior state sentence constitutes surplusage. (*Hash* v. *Henderson,* 385 F.2d 475, 477; *Hamilton* v. *Salter,* 361 F.2d 579, 581; *Bateman* v. *United States,* 277 F.2d 65, 69; *Montos* v. *United States,* 261 F.2d 39, 40; see also *Larios* v. *Madigan,* 299 F.2d 98, 100-101.) In *Hash, supra,* for example, where it was contended that since the federal court recommended that Hash's three-year federal sentence run concurrently with a prior state sentence, he completed his federal sentence by serving three years in a state prison, the court rejected the contention, stating in part (at p. 477), "The Attorney General of the United States is given the right to designate where a sentence shall be served. 18 U.S.C.A. § 4082(a). Thus, the recommenda-

tion of the District Court that Hash's original sentence run concurrently with the state sentence then being served in a state prison was surplusage and could have been disregarded by the Attorney General. . . . The fact that the Attorney General chose initially to accept the court's recommendation did not commit him to allow the prisoner, whatsoever the circumstances, to serve the full sentence concurrently. . . ." ▮ It thus appears that a federal sentence is consecutive with a prior state sentence if the United States Attorney General does not designate the state institution for service of the federal sentence.

To hold that confinement in federal institutions pursuant to a federal judgment of conviction is not to be credited toward a prior uncompleted California sentence does not leave such a parolee who commits a federal crime without protection against being required to serve consecutive federal and state sentences where the facts do not warrant the sentences being consecutive. A federal court in its judgment or a letter may recommend that a federal sentence run concurrently with a state sentence, and, although such a recommendation is not binding on the Attorney General, it is frequently followed by him (see *Hamilton* v. *Salter, supra,* 361 F.2d 579, 581; see 41 F.R.D. 467, 505), and if he designates the state prison for the service of the federal sentence the prisoner receives the benefit of concurrent sentences.

. ▮ With respect to the previous assumption that Yutze's "local confinement" from August 14, 1963, until January 7, 1964, has no effect upon whether he should receive credit on his California sentence for the period he served in federal institutions, no claim is made contrary to the assumption, and it is apparent that the matter assumed is correct. Manifestly it would be unreasonable to have the fortuitous circumstance that a parolee is first placed in such confinement before being confined in a federal institution determinative as to whether he is entitled to credit on his state sentence for the period he is confined in a federal institution.

The instant case differs from those holding that under section 3064 the Adult Authority, after suspending a defendant's parole and ordering his return to prison, may not disregard or add to his prison term time served in a county jail in California under a misdemeanor sentence concurrent with his prison sentence (*In re Fluery,* 67 Cal.2d 600, 601, 603 [63 Cal.Rptr. 298, 432 P.2d 986]; *Aguilera* v. *California Dept. of Corrections, supra,* 247 Cal.App.2d 150, 151; *In re Patton,* 225

Cal.App.2d 83, 87 [36 Cal.Rptr. 864]). There the jail sentence was concurrent with the prison sentence and the effect of the Adult Authority's disregarding the time served in jail would be that the prisoner would serve consecutive sentences, whereas here the federal sentence was not concurrent with the state sentence except for the period of Yutze's incarceration in California institutions. Also there the county officers could not have held the prisoner in jail in defiance of the order for his return to prison (see e.g. *Aguilera* v. *California Dept. of Corrections, supra,* 247 Cal.App.2d 150, 153), and his return to prison was thus delayed solely because the Adult Authority consented, whereas here the Adult Authority could not have compelled the federal government to surrender custody of Yutze (see *In re Patterson,* 64 Cal.2d 357, 361 [49 Cal.Rptr. 801, 411 P.2d 897]; *Strand* v. *Schmittroth,* 251 F.2d 590, 598).

The present case also differs from those holding that under section 3064 the Adult Authority may not disregard or add to the prison term time spent in jail under its own orders suspending, cancelling, or revoking parole. (*In re Fluery, supra,* 67 Cal.2d 600, 603; *In re Clark,* 254 Cal.App.2d 1, 2 [61 Cal.Rptr. 902]; *Aguilera* v. *California Dept. of Corrections, supra.*) In those cases, unlike the instant one, the prisoner was not serving a sentence imposed by another jurisdiction, and the Adult Authority had the power to secure the prisoner's reasonably prompt return to prison.

Yutze has himself to blame for not having completed service of his 1956 sentence. He has been given repeated opportunities by the Adult Authority both before and after his federal incarceration but each time has violated his parole and been returned to prison and on several of these occasions had a period of "dead time" before his return to custody.

The order to show cause is discharged and the petition for habeas corpus is denied. If upon finality of this decision the Adult Authority has not refixed petitioner's term, he is ordered returned to prison for completion of his term. The Adult Authority might decide to refix his term in view of factors such as that we ordered his release in January 1968, less than one month before his term expired, and it is possible he is now gainfully employed and leading a lawful life.

Traynor, C. J., McComb. J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.