[Crim. No. 6669. Fourth Dist., Div. One. Dec. 18, 1974.]

In re WILLIAM E. BENTLEY on Habeas Corpus.

## Counsel

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Joseph M. Cavanagh, Deputy Attorneys General, for Appellant.

Goldberg & Link, Charles L. Goldberg and Gershon D. Greenblatt for Respondent.

## Opinion

**WHELAN, Acting P. J.**—The People have appealed from a final order of

the Superior Court of San Diego County made upon the return of a writ of habeas corpus discharging William Earl Bentley from the custody of the California Adult Authority (the Authority) and the Sheriff of San Diego County, by whom he was being held for the Authority.

Bentley was granted parole by the Authority on August 17, 1970, from a sentence for robbery in San Diego County, in which the term had been fixed at nine and one-half years on August 6, 1970. Prior to September 21, 1973, the Department of Corrections had computed the discharge date fixed by the Authority as April 20, 1974.

Also prior to September 21, 1973, Bentley had been charged in San Diego County with manslaughter committed in the operation of a vehicle, in violation of Penal Code section 192, subdivision (3)(a). On September 21, 1973, while Bentley was in custody in the San Diego County jail, a prerevocation hearing was calendared by the Authority. He waived the prerevocation hearing and on October 1, 1973, his parole was revoked and his term refixed at the maximum—life.

While still in the custody of the San Diego County Sheriff, Bentley filed a petition for writ of habeas corpus, in which it is alleged that: "The Adult Authority no longer has jurisdiction over the petitioner because petitioner has already served the maximum sentence set by the Adult Authority."

Bentley's contention is that certain presentence credits, to which he claims he is now entitled by virtue of Penal Code sections 2900.1 and 2900.5, must be applied against the parole period, the termination date of which was fixed as April 20, 1974, thus advancing the discharge date by 2 years and 25 days. Thus the Authority would have had no jurisdiction over Bentley when it purported to suspend his parole in 1973.

The credit under section 2900.1 is claimed because the sentence for robbery from which he was paroled in 1970 was imposed in 1966 following a second trial after a first conviction for the same offense had been reversed on appeal. Service of the sentence under the first conviction commenced July 6, 1964, and continued until December 7, 1965, a period of one year, five months and one day.

In fact, the Authority, in computing a discharge date for Bentley prior to his release on parole from the robbery sentence, gave him credit on

the term for the time served on the reversed conviction of one year, five months and one day.

Since that computation was made prior to his release on parole on August 17, 1970, it is understandable that no credit was given for time spent in local custody prior to his delivery to the Director of Corrections. Section 2900.5 had not yet been enacted.[1]

Bentley was arrested on the robbery charge on February 24, 1964, and remained in custody until the first trial on that charge resulted in the conviction that was later reversed. He commenced serving the sentence on that conviction on July 6, 1964. The period of presentence confinement was 4 months and 11 days.

When arrested on February 24, 1964, Bentley was on parole from a sentence for a narcotics conviction. After his arrest, a parole violation hold was placed on him and his parole suspended. Later that parole was revoked and his sentence for the narcotics violation expired on February 10, 1970.

The original and the second sentence for the robbery were each made concurrent with the narcotics sentence.

On December 7, 1965, after the reversal of the robbery conviction in the first trial, Bentley was released by the Director of Corrections to the San Diego County authorities, in whose custody he remained until March 21, 1966, when service of the second sentence commenced.

The trial court found Bentley was entitled to credit for the period of 4 months and 11 days spent in jail prior to the first trial on the robbery charge, and of 3 months and 13 days· spent in jail between his delivery by the Director of Corrections to the local authorities on December 7, 1965, and his redelivery to the director on March 31, 1966, following sentencing for the second conviction on the robbery charge. Having done so, the trial court held the total of those two periods should advance the date of Bentley's successful completion of his parole from April 20, 1974, to August 24, 1973.

---

[1]*In re Young,* 32 Cal.App.3d 68 [107 Cal.Rptr. 915], decided May 3, 1973, after the effective date of section 2900.5, allowed a presentence credit to one sentenced prior to the enactment of section 2900.5 and who had been unable to furnish bail, and whose presentence confinement was the result of indigency.

As a consequence, Bentley was held to have been no longer under the jurisdiction of the Authority on September 21, 1973, when parole was ordered suspended by the Authority.

Two issues are presented:

1. Whether Bentley was entitled to credit on his sentence for the two periods spent in local custody; and

2. Whether, if he was so entitled, the credit should be applied to shorten a period of parole fixed by the Authority, the successful completion of which would give Bentley a right to a discharge.

The argument in opposition to the claim credit should be allowed is, as to the earlier period, that Bentley's confinement in jail was attributable to the hold placed upon him for possible parole violation, and that otherwise he might have been released on bail; and, as to the later period, that his jail confinement occurred during the actual service of his sentence under his narcotics conviction and as a part of it.

The time spent in jail in 1964, and again in 1965-1966, demonstrably was time applied to the narcotics offense sentence. The term of that sentence had been refixed at 10 years, the maximum. The term commenced February 10, 1960, and expired on February 10, 1970. In effect, therefore, Bentley received credit on that sentence for all the time spent in the San Diego County jail in the two periods mentioned. Such an allowance, where a parolee is held in local custody on suspicion of violation of parole, is proper. (*In re Fluery,* 67 Cal.2d 600, 603 [63 Cal.Rptr. 298, 432 P.2d 986]; *In re Yutze,* 69 Cal.2d 389 [71 Cal.Rptr. 673, 445 P.2d 289].)

That fact, and his detention as a result of the parole suspension, do not necessarily exclude him from consideration under Penal Code section 2900.5, subdivision (b) of which provides: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted." However, it should be noted that the subdivision does not say "attributable *exclusively* to charges arising," etc.

A comparison may be made between Bentley's detention in local custody between December 7, 1965, and March 21, 1966, in relation to

the subsequently imposed sentence for robbery, and the period spent by him in prison on the sentence first imposed for robbery in relation to the second sentence imposed for the same offense.

Under section 2900.1, he must be given credit for the prison time under the reversed judgment, although while in prison he was concurrently serving the sentence on the narcotics charge.

So, too, under section 2900.5 he may receive credit for the time spent in jail awaiting the second trial although receiving credit at the same time on the narcotics conviction sentence.

The trial court's determination as to the amount of credit to which defendant was entitled under section 2900.5 is upheld.

█ The court was in error in its attempt to allocate that credit, not to the sentence imposed by law of not less than five years, but to the term of parole prescribed by the Authority as a condition for defendant's discharge. *In re Grey,* 11 Cal.3d 554 [114 Cal.Rptr. 104, 522 P.2d 664], declares the applicable principles, where it is said, at pages 556-557: "Under petitioner's theory his parole must be deemed to have terminated before the March 1973 forgery charge was made and thus the subsequent parole hold and refixing of sentence were improper.

"Petitioner's theory must be rejected as inconsistent with the policy behind our Indeterminate Sentencing Law and the parole system. As indicated in *In re Kapperman, ante,* this policy reflects an emphasis on reformation of the offender, a policy which the Legislature has sought to effectuate by giving broad discretionary powers to the Adult Authority. The terms of incarceration and parole are to be fixed in accordance with the adjustment and social rehabilitation of the prisoner after consideration of the merits of each individual case. [Citation.] The members of the Adult Authority presumably are selected for their experience and expertise in the field of prisoner rehabilitation; the Authority's discretionary determinations are not to be lightly overridden.

"Application of section 2900.5 credit to advance the parole termination date would, of course, interfere with the Authority's discretionary functions. The parole period ordinarily would represent that period of time deemed appropriate for the parolee to demonstrate his readiness for complete discharge of custody. A reduction of that period by reason of a time credit could result in premature termination of parole supervision. Nothing in the language of section 2900.5 suggests that the

credit is to be applied to the parole termination date, and the equal protection principles involved in *In re Kapperman, ante,* do not require such a result. Consequently, it is only in those cases wherein the credited time, plus the prison and parole time already served or to be served, would exceed the maximum term that a retroactive credit under section 2900.5 can result in parole termination prior to the date fixed by the Adult Authority."[2]

Nevertheless, Bentley argues that if the minimum period has passed and there is a maximum of life, then the credit has no term to be applied against. He argues fairness thus requires that such credit be applied to the only other objective term in existence, the term of parole that had been fixed by the Authority.

He attempts to distinguish *In re Grey, supra,* 11 Cal.3d 554, and *In re Kapperman,* 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657], by noting that in *Kapperman* there was a minimum sentence that could still be credited, and in *Grey* there was a maximum sentence which was credited. He contends he has lost the benefits of the credits due him because if they had been applied initially he would have had an earlier parole eligibility date and review.

Bentley argues that the Authority was derelict in its duty because it did not, in 1966 when the second sentence began, credit him not only under section 2900.1 with time spent on the first sentence, but with time spent in presentence confinement under section 2900.5.

Penal Code section 2900.5 was enacted in 1971. *In re Kapperman, supra,* 11 Cal.3d 542, and *In re Grey, supra,* 11 Cal.3d 554, declaring the retroactivity of section 2900.5, were decided on May 23, 1974. The Authority cannot be held at fault for having failed in 1966 and 1970 to allow a credit provided for by a statute subsequently enacted, or for having failed in 1973, when defendant's parole was revoked, to take into account section 2900.5 by giving it retroactive effect upon a sentence imposed before adoption of the statute, whose retroactivity was decided only in May of 1974.

The question was presented to the trial court as one dependent on the Authority's continuing jurisdiction at the time of revocation of defendant's parole.

---

[2]"Neither would a retroactive credit necessarily affect the parole termination date of prisoners currently on parole in this state." (*In re Kapperman,* 11 Cal.3d 542, 547, fn. 5 [114 Cal.Rptr. 97, 522 P.2d 657].)

Its jurisdiction would have terminated only if as a matter of law defendant had a right, as the result of the declared retroactivity of section 2900.5, to have the credits under that statute applied to shorten the term of his parole, by advancing its termination date. He had no such right. (*In re Grey, supra,* 11 Cal.3d 554.)

Thus the jurisdiction of the Authority had not terminated prior to the revocation of defendant's parole. The existence of that jurisdiction cannot be negated by the subsequent action of redetermining defendant's term at the maximum of life. Nor does that redetermination of the term result inevitably in a denial of defendant's presentence credits.[3]

Bentley's position with regard to the applicability of the credits to the maximum term is theoretically the same as it was when he was sentenced on March 21, 1966, since a term of imprisonment under the Indeterminate Sentence Law (Pen. Code, § 1168) is for the maximum term until action is taken by the prison board whereby the term is fixed at a period between the maximum and minimum penalties. (*In re Quinn,* 25 Cal.2d 799, 804 [154 P.2d 875].)

The fact remains that it is open to the Authority to redetermine again Bentley's term at less than life. (Pen. Code, § 3020; *In re McLain,* 55 Cal.2d 78, 87 [9 Cal.Rptr. 824, 357 P.2d 1080].) That possibility is one that can be promoted and encouraged by Bentley himself. That such favorable action would not take place, should defendant's conduct merit it, is so improbable as to merit no consideration as a factor in our decision.[4]

Bentley remains under the jurisdiction of the Authority. The writ of habeas corpus should be discharged. The order granting the writ and discharging Bentley from custody is reversed, and the case is remanded to the superior court to make its order accordingly.

Ault, J. and Cologne, J., concurred.

A petition for a rehearing was denied January 2, 1975, and petitioner's application for a hearing by the Supreme Court was denied February 13, 1975.

---

[3]A mechanical application of such presentence credits is not feasible. In some cases, as in *Kapperman,* they may amount to as much as 300 days. The full use of such credits to advance the date for eligibility to parole in a mechanical fashion might be impossible with regard to a sentence of one year to life. (Pen. Code, § 288.) In such a case the credits could be applied only to the maximum sentence of life. Until the Authority sets a term less than life, there is no period against which credits can be applied.

[4]In view of our determination that credit was due under Penal Code section 2900.5, of which the Authority was not aware, the Authority, in exercising its discretion as to Bentley's further detention, must consider such credits.