Loyd Jasper ANGE, Jr., Appellant,

v.

E. L. PADERICK, Appellee.

No. 74–1181.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1975.

Decided July 23, 1975.

Michael Green and Gene Bruton,
Third-year law students (Ralph S. Spritzer, Philadelphia, Pa., Court-appointed
counsel, on brief), for appellant.

Wilburn C. Dibling, Jr., Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., on brief), for appellee.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is a habeas action by a state prisoner seeking credit on his sentence. The District Court dismissed the petition. We affirm the denial on the ground heard by the District Court but remand for consideration of a claim for relief raised initially in this Court.

The petitioner was first arrested and arraigned on a federal charge on April 28, 1972. Bail was set at $2,500. Allegedly unable to make bail because of indigency, he was committed to the Portsmouth (Virginia) City Jail as a contract federal prisoner, awaiting trial on the federal offense. While so imprisoned, he was indicted on a state offense, and at his trial on that indictment on May 24, 1972 he plead guilty and was duly sentenced. After sentence he was returned to the City Jail as a federal prisoner still awaiting trial on his federal offense.

On September 13, 1972, he plead guilty in federal court and was sentenced to confinement for a term of four years. When so sentenced the District Court understood the petitioner was a state prisoner and recommended that his federal sentence be served in a Virginia State penal institution. Later on the same day, the District Court ascertained that the petitioner was considered a federal prisoner. It then revised its sentence and committed the petitioner to the custody of the United States Attorney General.

Petitioner remained as a federal prisoner in the Portsmouth City Jail from September 13, 1972 to October 1, 1972, when he was transferred to the United States Penitentiary in Atlanta, Georgia. On October 2, 1972, the District Court entered, on motion of the petitioner, and with the consent of the United States Attorney an order amending petitioner's sentence by adding:

"The Court recommends that the sentence heretofore imposed on the 13th day of September 1972, be served, in whole or in part, in the Virginia State Penal System."

On May 8, 1973, the petitioner was transferred to state custody.

The petitioner sought in his petition credit on his state sentence for the period from October 2, 1972, when the District Court entered its recommendation that petitioner be permitted to serve his federal sentence in a state prison, to May 8, 1973, when he was actually transferred from federal to state custody. This was the claim dismissed by the District Court.

In this Court, petitioner raised the additional claim that he is entitled to credit on his state sentence for the period from May 24, 1972 to September 13, 1972, under the reasoning of *United States v. Gaines* (2d Cir. 1971) 449 F.2d 143.[1]

We shall first consider the original claim for credit as made by the petitioner. This claim for credit covers the period between the date of the District Court's recommendation that petitioner be permitted to serve his federal sentence in a state prison and the date he was actually transferred to state custody. The theory on which the petitioner bases this claim is that, by reason of the recommendation of the District Court, he should immediately have been transferred from federal to state custody and, had he been so transferred, the service of his state sentence would have begun on October 2, 1972 rather than on May 8, 1973.

 There are a number of difficulties in accepting this theory. In the first place, the theory assumes some effectiveness in the District Court's recommendation. There was none. *Hamilton v. Salter* (4th Cir. 1966) 361 F.2d 579, 581; *United States v. Herb* (6th Cir. 1971) 436

---

1. *See* 402 U.S. 1006, 91 S.Ct. 2195, 29 L.Ed.2d 428.

F.2d 566, 568; *Joslin v. Moseley* (10th Cir. 1970) 420 F.2d 1204, 1205.[2] The District Court is without authority to order service of petitioner's federal sentence in a state penal institution and any recommendation by it to that effect or even a declaration that the federal sentence shall run concurrently with a state sentence will be considered as pure "surplusage." This is so because the power to designate the place of confinement of a federal prisoner rests exclusively in the Attorney General of the United States.[3] And the District Court in this case fully recognized its want of power for it phrased its order in purely precatory terms.[4] In exercising his power to determine the place of confinement for federal prisoners, the Attorney General is exercising a discretionary power, to be interfered with only if exercised arbitrarily or capriciously. *Rodriquez-Sandoval v. United States* (1st Cir. 1969) 409 F.2d 529, 532, *cert. denied* 414 U.S. 869, 94 S.Ct. 180, 38 L.Ed.2d 71; *Lawrence v. Willingham* (10th Cir. 1967) 373 F.2d 731, 732. There is no evidence that the Attorney General acted arbitrarily or capriciously in failing to transfer the petitioner to state custody on October 2. The most that the petitioner argues is that the Attorney General acted dilatorily and without dispatch. Assuming *arguendo* that dilatoriness in acting on the District Court's recommendation could be considered an abuse of discretion on the part of the Attorney General, the record does not support any claim of dilatoriness. The petitioner himself was largely the author of the delay in effecting his transfer to state custody. For a time after his transfer to the federal prison in Atlanta, he expressed the desire to remain there in order to pursue available vocational training but not in the state institution. And even had the Attorney General been dilatory in transferring the petitioner to state custody, his dilatoriness would not be imputed to the state or require the state to abate the petitioner's sentence to compensate therefor. The District Court properly dismissed this claim.

 The claim for credit for the period between his state sentence and his federal sentence stands on a different footing; it has definite constitutional underpinnings. Had petitioner been able to make bond following his federal arraignment, it would have been possible for him to have commenced the service of his state sentence on May 24, 1972. In *United States v. Gaines, supra,* it was held that one who was unable to enter into federal custody in order to begin the service of his federal sentence because he lacked the funds to post bond in connection with a pretrial charge in the state court on which he was being held in state custody was entitled on constitutional grounds to credit on his federal sentence for the time spent in pretrial custody in the state court. The situation is reversed here but the analogy seems clear. To deny the petitioner credit for the time spent in pretrial federal custody, after sentence on the state offense, because of his inability to provide bail on his federal charge, it is persuasively argued by petitioner's counsel in this Court, would be to force him to serve a greater state sentence because of his indigency. Absent some special or untoward circumstance, this would be an impermissible discrimination, violative of the petitioner's constitutional rights as declared in *Gaines.*[5] The petitioner

---

2. The proposed new Federal Criminal Code provides that a federal sentence will run concurrently with a state sentence unless the sentencing court specifically provides otherwise. National Commission on Reform of Federal Criminal Laws, Study Draft—Federal Criminal Code, § 3206(1) and (6) (1970).

3. Section 4082(a), 18 U.S.C.; *Hamilton v. Salter, supra,* (361 F.2d at 581). The power has in turn been delegated by the Attorney General to the Bureau of Prisons, 28 C.F.R. § 0.96(c).

4. The Bureau of Prisons normally follows the recommendation of the Court. *Hamilton v. Salter, supra,* (361 F.2d at 581). It did so in this case. As said, the delay in so doing was largely of the petitioner's own making.

5. *See, also, United States v. Downey* (8th Cir. 1972) 469 F.2d 1030, 1031–2; *United States v. Sockel* (D.C.Mo.1973) 368 F.Supp. 97, 99–100.

should, it would seem, be entitled to credit on his state sentence for the time spent by him in the Portsmouth City Jail between May 24, 1972 and September 13, 1972, and we at the appellate level, it is urged, should grant it. Unfortunately, though, the petitioner did not raise this claim below and the District Court has had no opportunity to consider it. This cause is accordingly remanded to the District Court for the consideration of this additional claim, and, since the claim, if allowed, will accelerate the petitioner's rights to release, consideration should be expedited in the District Court.

Affirmed in part and remanded.

WIDENER, Circuit Judge (concurring and dissenting):

## I

I concur in the opinion of the court so far as it concerns the period following October 2, 1972 until May 8, 1973.

## II

I respectfully dissent from the opinion of the court as it in any wise considers that the period from May 24, 1972 to September 13, 1972 should be credited because of a claim of indigency and resulting failure to make bond.

Since the matter was not raised in the district court, we should not first consider the merits of the claim in this court but at most remand to the district court for reconsideration.

But, in all events, the claim for credit on the state sentence for the period from May 24, 1972 until October 2, 1972 on account of indigency has never been considered by any state court. The petitioner has not exhausted his state remedies. 28 U.S.C. § 2254(b).

Nowhere in the petition for habeas corpus filed in the federal court is any claim made that the petitioner was prevented by indigency from making bond for the federal offense so that he could spend his time awaiting the federal trial

in state confinement, thereby receiving credit on his state sentence. The petition for habeas corpus in the district court shows that the petition in the state court only raised "[t]he same ground as is raised in the present petition," and a reading of the petition does not even intimate the ground had been considered by any court, state or federal, until the matter was raised here in petitioner's brief.

In the case of *Smith v. Cox,* 435 F.2d 453 (1970), a more aggravated situation from the prisoner's viewpoint was presented. There, the claim was that the prisoner had been sentenced by a mentally incompetent judge, but the "state courts ha[d] not considered the issue on its merits." 435 F.2d at 460. We remanded the case to the district court to "stay the proceeding a reasonable period to enable petitioner to attempt to litigate these questions in the Virginia courts." 435 F.2d at 460. In the event the Virginia courts would not consider the issue, or if the issue were considered by them unfavorably, we then directed the district court to "conduct such further proceedings as may be appropriate." 435 F.2d at 460.

On petition for certiorari, sub nom. *Slayton v. Smith,* 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971), in a *per curiam* opinion, the Supreme Court vacated our judgment for proceedings consistent with its opinion, the operative parts of which follow:

"But, having determined that state remedies had not been exhausted, the Court of Appeals would have better served the policy of the statute had it avoided any implication as to the merits of so delicate a subject. Further, absent special circumstances, cf. *Nelson v. George,* 399 U.S. 224 [90 S.Ct. 1963, 26 L.Ed.2d 578] (1970), *Wade v. Wilson,* 396 U.S. 282 [90 S.Ct. 501, 24 L.Ed.2d 470] (1970), rather than ordering retention of the case on the District Court's docket, the Court of Appeals should simply have vacated the judgment of the lower court and directed dismissal of the petition for

failure to exhaust state remedies." 404 U.S. at 54, 92 S.Ct. at 174.

The majority opinion goes further here than *Slayton v. Smith* permits, for it not only remands but directs consideration of the merits by the district court, completely bypassing the state courts. Action by this court not so far reaching was expressly disapproved in *Slayton v. Smith.*

The case here should be controlled by *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), which, referring to *Slayton v. Smith,* followed it by only a month.

In *Picard,* a claim concerning the validity of a conviction in a Massachusetts state court was attacked by federal habeas corpus. The petitioner claimed that the amending procedures of a "John Doe" indictment had not been followed, and, because of the faulty amendment, he had not been lawfully indicted and thus his conviction deprived him of equal protection of the laws.

In the Massachusetts court, he had presented the facts, but his federal claim there was that the Fifth Amendment requirement of indictment by grand jury should apply to the States. It is interesting to note that in *Picard,* as here, the federal claim asserted in the court of appeals was not asserted in the district court. The opinion of the court states:

"The Court of Appeals acknowledged that respondent had not attacked his conviction on the equal protection ground, either in the state courts or in his federal habeas petition:

'[Respondent] did not present the constitutional question to the Massachusetts court in the particular focus in which this opinion is directed. We suggested it when the case reached us, and invited the Commonwealth to file a supplemental brief. Not unnaturally its first contention was to assert that [respondent] had not exhausted his state

remedy . . . .' Ibid." 404 U.S. 270, 271, 92 S.Ct. 509, 510.

Thus, we see the procedural aspects in *Picard* were even stronger for the petitioner than are those here. In *Picard,* the fact situation was fully presented to the court of appeals and to the state court, while here it has not been done (indigency as the reason for failure to give bond has not been ascertained), and the court of appeals suggested briefing of the issue not raised below or in the state court, while here its briefing was spontaneous.

The court of appeals in *Picard* reversed the district court which had dismissed the petition, and was in turn reversed by the Supreme Court, which held the state's objection that the petitioner had not exhausted state remedies should have been sustained.

With that background, quoted portions of the opinion are significant:

"We emphasize that the federal claim must be fairly presented to the state courts. If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' *Ex parte Royall, supra,* 117 U.S. [241], at 251 [6 S.Ct. 734, 29 L.Ed. 868], it is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." 404 U.S. at 275–6, 92 S.Ct. at 512.

\* \* \* \* \* \*

"The question here is simply whether, on the record and argument before it,

the Massachusetts Supreme Judicial Court had a fair opportunity to consider the equal protection claim and to correct that asserted constitutional defect in respondent's conviction. We think not." 404 U.S. at 276, 92 S.Ct. at 513.

\* \* \* \* \* \*

"To be sure, respondent presented all the facts. Yet the constitutional claim the Court of Appeals found inherent in those facts was never brought to the attention of the state courts." 404 U.S. at 277, 92 S.Ct. at 513.

In the light of *Slayton v. Smith* and *Picard v. Connor,* I am unable to perceive how this court has any authority to decide the question as to whether Ange should be credited for the time from May of 1972 until September of that year because he could not make the federal bond because of indigency. Neither the fact of his indigency nor the legal claim in light of the indigency was brought to the attention of either the state court or the district court, but sprang full blown from his brief in this court.

As I would not consider the claim because of failure to exhaust state remedies, I do not express an opinion on its merits, much as the dictum of the majority invites response. A single question, though, indicates only to a small extent the unanswered problems suggested by the majority opinion. Since petitioner has already received credit for the May–September 1972 period on his federal sentence, is he to receive credit for the same period on his state sentence although the crimes were unrelated and he was never in state custody during that period except for a few days for trial, for which he has already received credit?