[Crim. No. 11693. Fourth Dist., Div. One. June 22, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL TYRONE SIMPSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Victoria Sleeth, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske, Steven V. Adler and J. Richard Haden, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WORK, J.**—Convicted of robbery, Michael Tyrone Simpson, contends the trial court erred in enhancing his term because of his admitted prior felony conviction, while aggravating his base term because he was on parole for the same previous conviction when committing his present offense. He meritoriously claims additional presentence custodial credits.

■ Unless otherwise prohibited the proved fact Simpson served a previous prison term within the meaning of Penal Code[1] section 667.5, subdivision (b) permits a one-year enhancement to his sentence. Similarly, the admitted fact he was on prison parole when committing the current crime is a factor which a sentencing court may use to justify imposition of the aggravated upper-base term. (Rule 421(b)(4), Cal. Rules of Court.)

Section 1170, subdivision (b) and rule 441(b) and (c), California Rules of Court, prohibit the dual use of a single factor to both justify imposing the upper-base term and to enhance that term.

Simpson describes the trial court's action as the proscribed double use of a single fact. The Attorney General claims the fact of serving a previous prison term is separate from the fact of being on parole for the offense on which the previous prison term was served.

We resist the opportunity to give our advisory solution to the posed question because Simpson can in no way benefit by such an analysis.

---

[1] All references are to the Penal Code unless otherwise specified.

The trial court graphically articulated six appropriate factors, aside from the parole item: violence, weapon use, victim vulnerability, dominance in the crime, premeditation, and prior convictions other than the enhancing violation. These are factors relevant under rule 421(a)(1), (a)(2), (a)(3), (a)(5), (a)(8) and (b)(2), California Rules of Court, respectively. None of these factors are contested. If error were made its effect is miniscule and it is not reasonably probable a different sentence would have resulted in its absence (*People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]), and does not justify remand for resentencing. (*People v. Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53].)

■ A different picture emerges regarding the significance of Simpson's claim for presentence custodial credits (§ 2900.5) as augmented by good-time/work-time credit in accordance with *People v. Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874].

The sentencing court refused presentence custodial credits because it noted Simpson was concurrently incarcerated under a parole hold making him ineligible for release at any time following his arrest on the new charge. Both the sentencing court and the Attorney General on this appeal incorrectly rely on the decision of the Supreme Court, on different facts, in *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], to support denial of presentence credits.

Factually, Simpson was arrested and jailed October 29, 1979, and on the same day a parole hold was placed. Upon revocation of his parole he was given credit against the parole revocation term from October 29, the day of initial custody. He was sentenced on the current charge March 5, 1980, and requests section 2900.5 credits against his current sentence for the entire 129 days even though he had accrued custodial credits against his revoked parole term for those 129 days. Although it makes little practical sense and unwarrantedly removes any substantial deterrent effect from the threat of being remanded for further incarceration upon revocation of parole, under the law as presently written we hold he is entitled to dual credits.

Section 2900.5, subdivision (b) relied on in the *Rojas* decision, and the cases cited therein, was amended effective January 1977.[2] As stated in *Rojas* "'[t]he crucial element of ... [section 2900.5] is ... whether

2Statutes 1976, chapter 1045, section 2, page 4665.

the custody . . . "is attributable to *charges arising from the same criminal act or acts* for which the defendant has been convicted." (§ 2900.5, subd. (b).)'" (*In re Rojas, supra,* 23 Cal.3d 152, 156, quoting *In re Watson* (1977) 19 Cal.3d 646, 651 [139 Cal.Rptr. 609, 566 P.2d 243], italics added.) The section now reads: "For the purposes of this section, credit shall be given only where the custody to be credited is *attributable to proceedings* related to the same conduct for which the defendant has been convicted." (Italics added.) The change is irrelevant in the factual context of this case.

*Rojas* involves an individual asking for section 2900.5 credits where his confinement, while waiting trial and sentencing on the charge for which he made the claim, commenced only after he had already begun serving a sentence for a separate and unrelated conviction, which sentence was being served during the time he waited trial on the new offense. The court noted the legislative intent for presentence credits was to prevent indigents charged with a crime, but not yet tried, from being forced to spend more time in custody solely because of their indigency than those persons whose greater affluence allowed them presentence freedom. It found no legislative purpose to extend this protection to one already in custody and serving a sentence for one offense who was then charged with a second crime. "Section 2900.5 does not authorize credit where the pending proceeding *has no effect whatever* upon a defendant's liberty." (*In re Rojas, supra,* 23 Cal.3d 152, 156; italics added.)

However, the Supreme Court did not stop there, it proceeded to analyze *In re Bentley* (1974) 43 Cal.App.3d 988 [118 Cal.Rptr. 452], upon which Simpson also relies. It held a literal reading of section 2900.5 did, as *Bentley* found, entitle a defendant to presentence custodial credits where the new charge causes the loss of physical freedom. The petitioner in *Bentley* was given credit for the time spent in jail awaiting conviction even though he also received simultaneous credit for serving a term following revocation of a previous parole for committing the very offense for which he was awaiting trial. Thus *Rojas* implicitly holds that, while section 2900.5 will not allow credits where the pending proceeding has *no effect whatever* upon a defendant's liberty, it authorizes their grant where the presentence custody is at least partly due to the new proceedings. (See also *People* v. *Brown* (1980) 107 Cal.App.3d 858, 864, 865 [166 Cal.Rptr. 144]; *People* v. *Penner* (1980) 111 Cal. App.3d 168 [168 Cal.Rptr. 431].)

The Attorney General urges our result creates an absurd double credit situation such as that referred to in *People* v. *Brown, supra,* 107 Cal.App.3d 858, 861-862. *Brown* does, indeed, roundly condemn allowing double credits, although on facts significantly different from ours. However, even here it is clear the parole revocation was meaningless except as it may have prevented Simpson from obtaining his release on bail. He, in effect, did his parole time "standing on his head" because he was also serving his sentence for the new charge. The eviscerating of deterrent effect for parole violation recommitments due to commission of new felonies, is apparent.

However, section 2900.5 does not proscribe the giving of double credits in this situation, nor can we read the section to allow presentence custodial credits for the current offense only on condition the parole authorities do not give simultaneous credits. (Accord *Cerda* v. *Superior Court* (1974) 42 Cal.App.3d 491, 493-495 [116 Cal.Rptr. 896].)

To the argument our result does not further the legislative purpose in eliminating disparity between times in custody for the indigent and the wealthy, we note our Supreme Court in *In re Kapperman* (1974) 11 Cal.3d 542, 549 [114 Cal.Rptr. 97, 522 P.2d 657], holds section 2900.5 is to be applied without regard to whether presentence detention results from indigency and ability to post bail.

We too are frustrated by the apparent unfairness of negating the punishment recommitment following a parole revocation was intended to impose. The thoughtful analysis and consideration of issues expressed by Justice Cologne in his dissent points out the desirability for legislative direction to insure a meaningful difference in treatment between those persons whose parole violation consists of new criminal conduct and those whose recommitment is for some lesser defalcation. Our difference with our dissenting colleague is in interpretation, not philosophy. We would hope the Legislature will address this issue and eliminate the ambiguity.

Simpson is entitled to 129 days presentence custodial credits and to an additional 64 days good-time/work-time *Sage* credits. The judgment is modified to reflect additional credits in a total amount of 193 days. As modified, the judgment is affirmed.

Wiener, J., concurred.

COLOGNE, Acting P. J.—I respectfully dissent.

I would not allow Simpson to receive credit for time served for each of the offenses and, similarly, he should not receive double credit for good time/work time. He should not be rewarded in each of the two separate prison terms for the one period of custody when persons who are convicted of two crimes in a similar fashion but separated in time would not be given that benefit. *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], says: "[A] defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration.

".     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"There is no reason in law or logic to extend the protection intended to be afforded one merely *charged* with a crime to one already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime. As to the latter individual the deprivation of liberty for which he seeks credit cannot be attributed to the second offense. Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (*Id.*, at pp. 155-156; italics in original.)

Although the record is not as clear as it could be regarding the parole revocation and sentence fixing by the Board of Prison Terms (BPT), formerly Community Release Board (CRB), it is apparent on March 5, 1980:

1. Simpson's parole had been revoked;

2. CRB had fixed his sentence on the revocation at a six-month term ending April 29, 1980; and

3. The CRB gave him credit for the 129-day period[1] toward service of the 6 months it fixed for the first offense.

At the time of sentencing by the court, CRB had thus both revoked Simpson's parole and fixed his term to include the period of custody from the date of arrest so he was then "serving a term of incarceration."

---

[1]The 129-day period of time from arrest to sentencing extended from October 29, 1979, to March 5, 1980.

Under the clear language and holding of *Rojas*, at the time of sentencing Simpson was "already" serving a term and thus should not be given additional credit for the time spent in that kind of custody.

As *Rojas* says, there is no reason in law or logic to extend the protection to be afforded a person merely charged with a crime to a person already incarcerated and serving a sentence for a first offense and then charged and convicted of a second crime. Considering the penal purpose of imprisonment in general (§ 1170, subd. (a)(1)), when dual credit is awarded under these factual circumstances there is no incentive for a parolee to avoid additional criminality. He is rewarded with double the value of time served. The statute proscribes dual credit where consecutive sentences are imposed,[2] and clearly that does not apply to Simpson's case because his sentence was concurrent, but that language çan be viewed as an expression of legislative policy disfavoring the grant of dual credit in like cases. This case is, however, very much like a consecutive sentence case in that only the first 50 odd days of the sentences run concurrently and the extensive remainder of the 6-year term on the second offense follows completion of the term of the first.

There is authority for the position taken by the majority in the form of cases such as *People v. Penner* (1980) 111 Cal.App.3d 168 [168 Cal.Rptr. 431], *In re Pollock* (1978) 80 Cal.App.3d 779 [145 Cal.Rptr. 833], and *In re Bentley* (1974) 43 Cal.App.3d 988 [118 Cal.Rptr. 452]. *Penner*, involving facts essentially indistinguishable from those in Simpson's case, did not discuss the *Rojas* court's statement "a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration" (23 Cal.3d at pp. 155-156), and did not explain why a defendant whose term was fixed by CRB before sentencing was not one "already serving a term of incarceration." Instead, *Penner* relied on the flexible concept of causation as reflected by a statement in *Rojas* describing the *Bentley* case and saying that if the new charge "caused" the loss of physical freedom, the time in custody is based on the same conduct for which the defendant is convicted, the new offense, and the section 2900.5 credit thus applies.[3] In my view, this statement does not represent the holding of

---

[2]Section 2900.5, subdivision (b), reads: "Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

[3]In *Rojas*, the court said of *Bentley*: "In *In re Bentley* . . ., the defendant was on parole pursuant to a prior narcotics conviction when he was arrested for robbery. *It was the new charge which caused his loss of physical freedom and thus the time in custody*

the *Rojas* case, and there is little assistance gained from applying the statement to situations where there are multiple causes of a loss of freedom, such as a parole hold and a new arrest and charge, each of which can be said to "cause" the lost freedom either by initiating custody or causing its continuation through inability to make bail. *Penner* is not persuasive authority for granting a section 2900.5 credit in Simpson's case.

The *Pollock* case, *supra*, 80 Cal.App.3d 779, involved dual state prison sentences as in *Rojas*, and was expressly overruled by *Rojas*; and the *Bentley* case, *supra*, 43 Cal.App.3d 988, though approved in its result by *Rojas*, was disapproved in its key language showing its reasoning which declared section 2900.5 does not say "attributable *exclusively* to charges arising" etc. (*In re Rojas, supra*, 23 Cal.3d 152, 157).

While not specifically saying so, the *Rojas* case as I read it stands for the proposition the section 2900.5 credit applies only where the custody is *exclusively* attributable to the proceedings related to the same conduct for which the defendant is convicted, for not only does the court disapprove the contrary statement in *Bentley*, but it says: "Defendant's chief semantic argument is that because subdivision (b) of section 2900.5 does not read '*exclusively* attributable to proceedings' he should be granted the credit he seeks. He is in error. Although the word 'exclusively' does not appear, it is clearly provided that credit is to be given 'only where' custody is related to the 'same conduct for which the defendant has been convicted.'" (23 Cal.3d 152 at p. 155; italics in original.)

Thus, as to persons, such as Simpson, already serving a term of incarceration by virtue of the CRB or BPT fixing the term to include the new offense presentence custody, the custody is not exclusively attributable to proceedings related to the same conduct, the new charge, for which the defendant is convicted. It follows the section 2900.5 credit is inapplicable to the conviction of the new charge.

*for which he sought credit was based on the same conduct for which he was convicted, the robbery charge.* A literal interpretation of section 2900.5 would have allowed Bentley his credit under those facts." (*In re Rojas, supra*, 23 Cal.3d 152, 157; italics added.)

Looking to the above-italicized language of *Rojas*, the court in *Penner* concluded: "Here, as described by the court in *Rojas*, defendant was at liberty on parole and it was the commission of new offenses involved in the instant proceedings which caused his parole to be revoked and his liberty to be lost." (*People* v. *Penner, supra*, 111 Cal.App.3d 168, 171.)

I would follow the rule of *Rojas* as above discussed, and cases denying the dual credit such as *People* v. *Brown* (1980) 107 Cal.App.3d 858 [166 Cal.Rptr. 144], and *In re Hodges* (1979) 89 Cal.App.3d 221 [152 Cal.Rptr. 394], which declares: "It is not unreasonable to deny to those under a subsisting prison sentence credit upon a later imposed term for time that in any event would be exacted as the price of an antecedent conviction, while granting such credit to others who are similarly situated except for the prior claim upon their liberty. In fact, if but for his prison commitment petitioner *could* arrange for his pretrial release, award of credit to petitioner notwithstanding that fact, while denying credit to the unconvicted but accused defendant because he did *in fact* make bail, constitutes a reward for repeated criminal conduct. The purpose of Penal Code section 2900.5 is to eliminate the inequality between those financially able to post bail and the poor who are unable to do so. (*In re Watson* (1977) 19 Cal.3d 646, 651-652 ...). Petitioner's continued incarceration is a result of his recidivous criminality, not his poverty." (*Id.*, 89 Cal.App.3d at pp. 225-226; italics in original.)

I would affirm the judgment in Simpson's case without modification.

Respondent's petition for a hearing by the Supreme Court was denied October 2, 1981. Richardson, J., was of the opinion that the petition should be granted.