[No. AO18063. First Dist., Div. Four. Mar. 26, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
SABAN DREAS, Defendant and Appellant.

COUNSEL

David Murray, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CALDECOTT, P. J.**—The principal issue presented on this appeal is whether the administering of drugs to overcome the victim's resistance can constitute the element of force within the meaning of Penal Code section 211.[1]

Saban Dreas appeals from a judgment of conviction, following a jury trial, of three counts of robbery, three counts of administering drugs with intent to commit a felony (§ 222), three counts of burglary and two counts of auto theft.

The facts in each of the three instances are basically the same. Appellant would patronize a bar, strike up a conversation with the victim, a patron, and suggest that they go and have coffee. They would go to the victim's home, where appellant would surreptitiously insert lorazepam, a hypnotic sedative and tranquilizer, into the victim's coffee. After the victim was rendered unconscious, appellant would take money, valuable items of personal property (in two incidents in excess of $25,000) and in two incidents the victim's automobile.

I.

*The "Force" Element of the Robbery*

As stated above, appellant was found guilty of three counts of robbery. These convictions were predicated on evidence showing that in each instance appellant used lorazepam, a tranquilizer, dissolved in hot coffee in order to drug his victims. The drug rendered the victims unconscious, overcoming their resistance to the taking of various items of personal property from their homes or persons. ■ Appellant contends that the evidence is insufficient to sustain the robbery convictions because the use of drugs does not constitute "means of force or fear" within the meaning of section 211. We disagree.

---

[1]Unless otherwise indicated, all statutory references are made to the Penal Code.

Section 211 provides that "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

While the issue thus presented is one of first impression in California, the legal authorities and sister state cases unanimously underline that the administering of drugs to overcome the victim's resistance does constitute force within the purview of section 211.

Thus, Professor Perkins addressing this issue in his treatise concluded that: "Just as battery may be committed by the administration of poison, so the force used to obtain property from a person against his will may be applied internally." (Perkins & Boyce, Criminal Law (3d ed. 1982) p. 348.) Other scholars have reached identical conclusions. LeFave and Scott write: "One may commit robbery by striking his victim with fist or weapon and then, having thus rendered the victim unconscious or dazed or unwilling to risk another blow, taking property away from him. One may also render one's victim helpless by more subtle means, as by administering intoxicating liquors or drugs in order to produce a state of unconsciousness or stupefaction; to act in this way is to use force for purposes of robbery." (LeFave & Scott, Criminal Law (1972) pp. 697-698; accord, 4 Wharton's Criminal Law (14th ed. 1981) § 479, p. 67.)

A case in point is *State* v. *Snyder* (1918) 41 Nev. 453 [172 P. 364]. In *Snyder,* appellant administered chloralhydrate to one Cooper, who was in charge of a saloon. After Cooper became unconscious, appellant took money from the cash register. The Nevada Supreme Court held that the administering of the drug constituted so-called "constructive force" which was sufficient to sustain the robbery conviction. In his concurring opinion, Chief Justice McCarran explained the matter as follows: " 'Force' is the power or energy by which resistance is overcome. . . . When, to take the personal effects of another, a blow is struck with a bludgeon, thereby paralyzing the victim's power of resistance, the taking will constitute robbery. The same effect might be produced on the victim by the physical act of administering a deadly potion. In either case resistance is involuntarily overcome. Great physical strength might be required to accomplish the result in the first instance, while a mere turning of the hand might effect the consequence in the second; force, however, is present in both. The agency through which the force operates is immaterial. The result in either case is the overcoming of resistance without the voluntary co-operation of the subject whose resistance is repressed; this is the test." (*State* v. *Snyder, supra,* 172 P. at pp. 366-367.)

The principles set out above rest on sound logical foundation. A showing of "force or fear" is not (and cannot be) limited to external forces such as bludgeoning the victim or displaying a lethal weapon to overcome his will and resistance. A poison or intoxicant, although internally applied, may also serve as a potent means to achieve the same goal and may also render the

felonious taking of personal property a taking against the will of the victim, thereby constituting robbery.

## II.

### *Appellant's Pretrial Statements*

Appellant was arrested at about 3 p.m. on January 28, 1982, and was taken directly to an interview room at the Hall of Justice in San Francisco. The police began the interview with appellant at about 3:45 p.m. Appellant was admonished of, understood and waived his constitutional rights. Appellant requested to call a friend but was not permitted to use the telephone until he was booked after the interview. The interview was terminated at about 5:15 p.m. Concerning the circumstances surrounding the interview, both the arresting officer, Inspector Dito, and the interviewing officer, Inspector Hamilton, testified that shortly after arriving at the burglary detail the handcuffs were removed from appellant and that appellant did not appear to be under the influence of alcohol or drugs, nor did he exhibit any signs of intoxication or drug use. The trial court, after considering the totality of circumstances, found that appellant had been properly advised of his constitutional rights; that his statements to the police had been voluntary and uncoerced; and that as a consequence appellant's pretrial admissions were admissible in evidence.

Appellant's first contention on appeal is that his pretrial statements to the police were involuntary within the meaning of the law and thus improperly admitted at trial. More specifically, appellant argues: (a) that the police violated his statutory right to use a telephone (§ 851.5) which tainted his subsequent statements; (b) that he was interrogated by the police after invoking his Fifth Amendment privilege; and (c) that his incriminating statements were a result of force and coercion on the part of the police. As discussed below, none of these contentions has any merit.

■ (a) *Denial of Use of Telephone*: Appellant's first argument that in violation of the statute he was denied his right to use the telephone after his arrest must fail for the simple reason that no such statutory violation has occurred.

Section 851.5, subdivision (a), provides in pertinent part that *"Immediately upon being booked, and, except where physically impossible, no later than three hours after arrest,* an arrested person has the right to make at least two completed telephone calls, as described in subdivision (b)."* (Italics added.)

As appears on the face of the statute, the police have a duty to grant the suspect use of a telephone immediately after booking, but no later than within three hours after his arrest. In the case at bench, the police fully complied with the statutory mandate set out in section 851.5. As mentioned earlier, appellant was arrested at approximately 3 p.m., and following an interview he was booked at 5:15 p.m. The record also shows that immediately after the booking appellant was allowed to use the telephone and that he, in fact, did carry on an extended telephone conversation from the police station. Since said telephone use took place immediately after his booking and well within three hours after his arrest, appellant cannot well complain that either letter or spirit of the statute was violated.

(b) *Invocation of Fifth Amendment*: During the interrogation and prior to making his statements, appellant expressed his request to talk to some of his friends. The police continued the interrogation and appellant was allowed to speak with his friends only following the interrogation and making the incriminating statements. ■ Appellant contends that due to the fact that he was a foreigner and had an incomplete grasp of the English language his request to speak with his friends was tantamount to invoking his Fifth Amendment privilege which rendered the admissions made subsequent thereto inadmissible in evidence (*People* v. *Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793]; *People* v. *Randall* (1970) 1 Cal.3d 948 [83 Cal.Rptr. 658, 464 P.2d 1]; *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]).

To start with, the record fails to sustain that appellant does not have an adequate grasp of English. Appellant possesses a green card and has been in this country for 15 years. He did not ask for an interpreter at any time during trial. As the trial court aptly observed, appellant did not have problems with the language and showed a fine choice of words and a good command of English throughout the trial.

■ In addressing the principal issue of whether appellant here has invoked his Fifth Amendment privilege by intending to talk to some of his friends during the police interrogation, we initially note that no particular form of words or conduct is necessary to assertion of the privilege and that the invocation of privilege or its waiver constitutes a question of fact which cannot be resolved by a per se rule, but only on an ad hoc basis taking into account the special circumstances of each case (*People* v. *Ireland, supra,* 70 Cal.2d at p. 535; *People* v. *Turnage* (1975) 45 Cal.App.3d 201, 210 [119 Cal.Rptr. 237]; *People* v. *Smith* (1969) 270 Cal.App.2d 715, 724 [76 Cal.Rptr. 53]). ■ However, it is well settled that in order to assert the privilege the attitude of the individual must be such as to show a *present lack of willingness* to discuss the case with the police. As stated in *People*

v. *Burton, supra,* 6 Cal.3d at page 382, "Any words or conduct which 'reasonably appears inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time* [fn. omitted]' [citation] must be held to amount to an invocation of the Fifth Amendment privilege. . . ." (Italics in original.) As pointed out in *Burton,* to invoke the privilege a minor would likely or normally request to see his parents, while an adult would request an attorney.

 In the case at bench, the record demonstrates that appellant wanted to talk to his friends to let them know of his whereabouts and also that after having been properly advised of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], appellant repeatedly expressed his willingness to talk to the police.[2] In light of these circumstances we cannot but conclude that appellant did not invoke his *Miranda* privilege within the meaning of the law (cf. *People* v. *Burton, supra,* 6 Cal.3d 375; *People* v. *Randall, supra,* 1 Cal.3d 948; *People* v. *Ireland, supra,* 70 Cal.2d 522), and that as a consequence the incriminating statements made during the continuing interrogation were properly admitted in evidence.

(c) *Coercion*: Appellant's third contention, that his statements to the police were obtained by force and coercion, is also not borne out by the evidence.

---

[2]The pertinent portions of the record read as follows: "Mr. Dreas, again. I want to advise you of your rights. You have a right to remain silent, a right to an attorney. That anything you say can and will be used against you in a court of law. If you can't afford an attorney, one will be provided before any questions are asked. You understand that?

"A. Yes sir.

"Q. Okay. Having your rights in mind, do you wish to speak to me?

"A. Well, only, you know, like sir, you know, if I could just call those guys.

"Q. Yes, friends of yours.

"A. Yes.

"Q. Yeah, I told you you could call those. I want to get this interview on.

"A. Thank you very much.

"Q. Do you wish to talk to me is the question.

"A. I don't really have no questions thank you.

"Q. No, no, do you wish to talk to me. I've advised you of your rights. Right?

"A. Yeah.

"Q. All right, you understand your rights?

"A. Yes.

"Q. Do you wish to talk to me about the case?

"A. Yeah, of course, sure.

"Q. Okay.

"A. Sure.

"Q. That's, I wanted to get that cleared.

"A. Oh, yeah, all right. I didn't understand you know what you said you know. I'm sorry.

"Q. But you understand now?

"A. Yeah, of course, yeah."

■ It is, of course, well settled that a confession made by a criminal defendant is admissible only if the People prove beyond a reasonable doubt that it was voluntary; i.e., that it was given freely, without any form of compulsion, threat or promise of reward (*People* v. *Thompson* (1980) 27 Cal.3d 303, 327-328 [165 Cal.Rptr. 289, 611 P.2d 883]). On appeal, we are bound by the rules set out in *People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672], and its progeny. ■ Accordingly, it is our duty to make an independent determination of voluntariness by examining the uncontroverted facts; as to the controverted or conflicting facts, however, we must accept the version of facts most favorable to the People to the extent it is supported by the record (*People* v. *Jimenez, supra,* 21 Cal.3d at p. 609; *People* v. *McClary* (1977) 20 Cal.3d 218, 227 [142 Cal.Rptr. 163, 571 P.2d 620]; see also *People* v. *Duck Wong* (1976) 18 Cal.3d 178, 187 [133 Cal.Rptr. 511, 555 P.2d 297]; *People* v. *Carr* (1972) 8 Cal.3d 287, 296 [104 Cal.Rptr. 705, 502 P.2d 513]).

In the case at bench, there were two different versions as to how appellant's pretrial statements were obtained. Appellant testified that at the time of interrogation he was "high" from smoking PCP (Phenyl Cyclohexyl Piperidine); that the handcuffs were not removed from him until the end of the interview; that the police told him that he faced "100 years in prison"; that he was denied water; that he asked for an attorney or an interpreter; and that he gave the statements because he was scared, etc. In rebuttal, both Officers Hamilton and Dito maintained that appellant had not been restrained during the interrogation; that he had not appeared drugged or intoxicated; that he had never asked for either an attorney or an interpreter; that he had not been denied water during the interview; that no threats or promises had ever been made; and that appellant had been cooperative and given his statements without any form of coercion or intimidation. The trial court, which also listened to the unedited tape of interrogation, resolved the conflict by believing the testimonies provided by the officers and found that the taped statements of appellant were voluntarily given. Since the finding of voluntariness in this case is predicated on extensive, solid evidence, we are powerless to overturn the ruling of the trial court. (*People* v. *Jimenez, supra,* 21 Cal.3d at p. 609; *People* v. *McClary, supra,* 20 Cal.3d at p. 227.)

■ Lastly, we briefly note that contrary to appellant's insistence, the temporary denial of use of a telephone did not amount to coercion of the type that would require a reversal of the finding of voluntariness. As pointed out in *People* v. *Stoner* (1962) 205 Cal.App.2d 108 [22 Cal.Rptr. 718], reversed on other grounds in *Stoner* v. *California* (1964) 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889], the coercion, if any, was coercion to wait to use the telephone, and not to speak with an officer, and that it is beyond belief "that defendant would involuntarily confess to a crime merely be-

cause he was required to wait before making a telephone call." *(People* v. *Stoner, supra,* 205 Cal.App.2d at p. 115).

### III.

### *The Unedited Tape*

As mentioned earlier, the trial court ruled that appellant's pretrial statements were voluntary and admissible. Upon the agreement of the prosecutor and trial counsel, only a shortened, edited version of the taped statements was admitted in the prosecution's case-in-chief. However, the prosecutor warned that should appellant testify and contradict statements on the unedited version of the tape, she would seek to impeach appellant's testimony with the unedited tape.

Appellant testified at trial. He maintained that he formed homosexual liaisons with each of the robbery victims, accompanied each to his home where the sexual activity occurred, received payment and departed. Appellant also claimed that he took cash and drove away the cars of two of the victims only because the men were unconscious and appellant needed a ride. Appellant explicitly denied administering a drug to any of the victims or taking property other than cash from the victims. Appellant lastly stated that he was handcuffed during the entire interview with the police on the day of his arrest; that he requested counsel; and that the police treated him harshly and shouted at him.

In rebuttal, the trial court admitted in evidence a similar uncharged activity to show a common scheme or plan. The trial court also permitted the prosecution to introduce the unedited recording of appellant's pretrial interview in order to impeach his trial testimony. The jury was instructed about the limited purpose of the evidence.

Appellant now claims that the admission of the unedited version of the tape constituted reversible error because it advised the jury on the commission of prior, uncharged offenses which unjustifiably prejudiced his cause. (Evid. Code, § 1101, subd. (a); *People* v. *Griffin* (1967) 66 Cal.2d 459 [58 Cal.Rptr. 107, 426 P.2d 507].) Appellant's contention must be rejected for two considerations.

First, although proof of involvement in prior crimes is not admissible merely to show the criminal propensity of the defendant (Evid. Code, § 1101, subd. (a)), it is well settled that evidence of other crimes is properly admitted in order to show guilty knowledge, motive, opportunity, intent, common design, plan or modus operandi. (Evid. Code, § 1101, subd. (b);

*People* v. *Thomas* (1978) 20 Cal.3d 457, 464 [143 Cal.Rptr. 25, 573 P.2d 433]; *People* v. *Kelley* (1967) 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947].) ▪ In the case at bench, both the charged and uncharged offenses showed a strikingly similar common design and therefore were properly admitted under the common modus operandi exception set out in subdivision (b) of Evidence Code section 1101 and the case authorities thereunder.

Secondly, and equally to the point, the unshortened version of the tape was also admissible as rebuttal evidence. (*People* v. *Terry* (1970) 2 Cal.3d 362, 396 [85 Cal.Rptr. 409, 466 P.2d 961], cert. dism., 406 U.S. 912 [32 L.Ed.2d 112, 92 S.Ct. 1619]; *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450, 459 [163 Cal.Rptr. 57].) Evidence Code section 351 provides that all relevant evidence is admissible unless otherwise provided by statute. Evidence going to the credibility of a witness is relevant evidence. (Evid. Code, § 406.) Lastly, Evidence Code section 780 emphasizes that except as otherwise provided by the statute, the court or jury in assessing the witness' credibility may consider "any matter that has any tendency in reason to prove or disprove the truthfulness of [the witness'] testimony . . ."

In the case at bench, appellant in his trial testimony opened up a number of questions which could be properly rebutted by the unedited version of the tape. For this reason, the latter evidence was correctly admitted to overcome material matters sought to be proved by the defense (*People* v. *Terry, supra,* 2 Cal.3d at p. 396; *People* v. *Vidaurri, supra,* 103 Cal.App.3d at p. 459).

Appellant's contention that the tape in question should have been excluded under Evidence Code section 352 may be briefly answered. ▪ It is black letter law that the exclusion of evidence under Evidence Code section 352 is largely discretionary with the trial court and that its ruling may not be disturbed on appeal unless there is a showing of a manifest abuse of discretion (*People* v. *Benson* (1982) 130 Cal.App.3d 1000, 1006-1007 [180 Cal.Rptr. 921]). In the instant case, appellant failed to demonstrate such an abuse.

## IV.

### The Sentence

Appellant was sentenced to a total prison term of ten years and eight months which was arrived at as follows: count V burglary, aggravated term, six years; one year enhancement for excessive taking (§ 12022.6, subd. (a)); count III burglary, consecutive term of one year and four months;

count IX burglary, consecutive term of one year and four months; and one year enhancement for a prior felony conviction (§ 667.5, subd. (b)).

For the imposition of the aggravated term in count V the trial court stated the following reasons: "The basis for the Court's sentencing is that the Court finds that there are no mitigating circumstances and that all the circumstances are in aggravation, and for the record, the Court will set forth what the justification for the imposition of the aggravated terms are.

"The crime involved a threat of great bodily injury and disclosed a high degree of callousness, which is in violation of Rule 421(a)1 [Cal. Rules of Court.].

"The victims were particularly vulnerable, Rule 421(a)3.

"The crimes involved multiple victims, Rule 421(a)4.

"The planning, sophistication and professionalism with which the crime was carried out indicated premeditation, Rule 421(a)8.

"The crime involved the taking of property of great value, Rule 421(a)10.

"The defendant took advantage of the position of trust or confidence, Rule 421(a)12.

"The defendant engaged in a pattern of violent conduct which indicates a serious danger to society, Rule 421(b)1.

"The defendant's prior convictions are numerous and of increasing seriousness, Rule 421(b)2.

"The defendant has served prior prison terms, Rule 421(b)3.

"The defendant was on parole when he committed the crimes, Rule 421(b)4.

"The defendant's prior performance on parole was unsatisfactory, Rule 421(b)5."

The trial court also stated its reasons for choosing consecutive terms in counts III and IX by referring to the following factors: "The crimes involve separate acts of violence, Rule 425(a)2.

"The crimes were committed at different times and places, Rule 425(a)3.

"The crimes involved multiple victims, Rule 425(a)4.

"The convictions for which sentence are to be imposed are numerous, Rule 425(a)5.

"The many factors in aggravation listed above, Rule 425(a)6 [*sic*, 425(b)]."

Appellant contends that the sentencing set out above was erroneous, requiring a remand of the case for resentencing, because (1) certain factors utilized by the trial court for imposition of the aggravated term and consecutive sentences were either unsupported by the record or constituted a prohibited dual use of facts and (2) the trial court failed to consider the mitigating factors.

 Even assuming that certain factors were erroneously relied upon by the trial court for imposing the upper (aggravated) term for the count V burglary and consecutive sentences for the counts III and IX burglaries, the sentencing is correct. It is well settled that the imposition of the aggravated term may be sustained upon a single valid factor (*People* v. *Covino* (1980) 100 Cal.App.3d 660, 670 [161 Cal.Rptr. 155]; see also *People* v. *Hunt* (1982) 133 Cal.App.3d 543, 562 [184 Cal.Rptr. 197]; *People* v. *White* (1981) 117 Cal.App.3d 270, 282 [172 Cal.Rptr. 612]) and also a consecutive term may be held valid even though it is supported only by some (but not all) the circumstances enumerated by the trial court (*People* v. *Ginese* (1981) 121 Cal.App.3d 468, 478-479 [175 Cal.Rptr. 383]; *People* v. *Hunt, supra,* 133 Cal.App.3d 543; *People* v. *White, supra,* 117 Cal.App.3d 270).

This case falls squarely within the aforestated rules. The imposition of the aggravated term is abundantly supported by a multitude of circumstances, i.e., the victim suffered great bodily injury inasmuch as he was rendered unconscious and had to undergo hospitalization (Cal. Rules of Court, rule 421(a)(1)); *People* v. *Jackson* (1980) 103 Cal.App.3d 635, 639 [163 Cal.Rptr. 115]; *People* v. *Mathews* (1980) 102 Cal.App.3d 704, 710 [162 Cal.Rptr. 615]; appellant engaged in a pattern of violent conduct (rule 421(b)(1)); suffered prior incarceration for petty theft (rule 421(b)(3)); and was in violation of parole at the time of the commission of the new crimes (rule 421(b)(4)). Similarly, the imposition of consecutive sentences for the additional burglaries was well justified for the reasons that the crimes involved separate acts of violence (rule 425(a)(2)); that the crimes were committed at different times and places (rule 425(a)(3)); the convictions for which the sentences were imposed were numerous (rule 425(a)(5)); and there were numerous circumstances in aggravation (see discussion, *supra*; rule 425(b)). In light of this record, even if we were to assume that error

occurred, it would be harmless and it is not reasonably probable that a different sentence would have been reached by the trial court (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]; *People* v. *Simpson* (1981) 120 Cal.App.3d 772, 775 [174 Cal.Rptr. 790]). As a consequence, a remand for resentencing is not warranted in this case (*People* v. *Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53]; see also *People* v. *Simpson, supra,* 120 Cal.App.3d 772).

Appellant's alternative argument that the trial court failed to consider the circumstances in mitigation is subject to summary disposition. Contrary to appellant's claim, the record affirmatively shows that the trial court did consider mitigating circumstances, but found none.

The judgment is affirmed.

Panelli, J., concurred.

**POCHÉ, J.**—I respectfully dissent.

This is not a situation where the suspect invoked his right to counsel. Instead, it is an absolutely straightforward invocation of his right to remain silent.

The uncontradicted testimony on the question of whether defendant invoked the right to remain silent is contained in the tape recording of the confession: Officer: "Mr. Dreas, again. I want to advise you of your rights. You have a right to remain silent, a right to an attorney. That anything you say can and will be used against you in a court of law. If you can't afford an attorney, one will be provided before any questions are asked. You understand that? [¶] A. Yes sir. [¶] Q. Okay. Having your rights in mind, do you want to speak to me? [¶] A. Well, only, you know, like sir, you know, if I could just call those guys. [¶] Q. Yes, friends of yours. [¶] A. Yes. [¶] Q. Yeah, I told you you could call those. I want to get this interview on."

That there is no doubt about what the officer meant is nailed down by the officer's testimony: "Q. So you did not allow him to make any phone calls until the interview was completed; is that right? [¶] A. That is correct."

The United States Supreme Court in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], set down the rules, the warnings that must be given persons in custodial surroundings and then spelled out the procedure required after the warnings have been given: "Once warnings have been given, the subsequent procedure is clear. If the

individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. [Fn. omitted.] At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise, . . ." (*Id.*, at pp. 473-474 [16 L.Ed.2d at p. 723].)

Any words or conduct which reasonably appear " 'inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time* [fn. omitted]' [citation] must be held to amount to an invocation of the Fifth Amendment privilege." (*People* v. *Burton* (1971) 6 Cal.3d 375, 382 [99 Cal.Rptr. 1, 491 P.2d 793], quoting *People* v. *Randall* (1970) 1 Cal.3d 948, 956 [83 Cal.Rptr. 658, 464 P.2d 114], italics in original.)

All that is required is an indication of the suspect's unwillingness to continue to talk with the police or an indication of the suspect's desire for help in how to conduct himself with police in order for the request to constitute an invocation of the privilege. (*People* v. *Burton, supra,* 6 Cal.3d at p. 383.) That *in haec verba* is the situation here. Therefore the People had the burden of affirmatively demonstrating that such was not the desire on the part of defendant. (*People* v. *Randall, supra,* 1 Cal.3d at p. 957.) The People did not meet that burden, nor did they attempt to do so.

In such a situation: ". . . The police must cease custodial interrogation *immediately* upon exercise of the privilege. The police did not so cease in this case, the confession obtained by the subsequent questioning was inadmissible, and, therefore, the admission of such confession was prejudicial per se and compels reversal of the judgment on all counts. [Citation.] The admission of this confession constitutes reversible error even though it was subsequently preceded by a knowing and intelligent waiver of the privilege, as we held under identical circumstances in *Fioritto, Ireland* and *Randall,* because: 'After the initial assertion of the privilege, the defendant is entitled to be free of police-initiated attempts to interrogate him. Any statements made by a defendant in response to such questioning cannot be characterized as voluntary.' [Citation.]" (*People* v. *Burton, supra,* 6 Cal.3d at p. 384, italics added.)

The denial of the invocation of defendant's right to remain silent violated the Fifth Amendment of the United States Constitution. "I want to get this interview on" is, as I understand it, just the kind of police pressure that

*Miranda* was designed to cleanse from the American system of criminal justice. For these reasons I would reverse the judgment.[1]

A petition for a rehearing was denied April 11, 1984. Poché, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied June 14, 1984. Bird, C. J., was of the opinion that the petition should be granted.

---

[1]It is also worth noting that even apart from the violation of defendant's constitutionally guaranteed right to remain silent, the officers also violated his statutory right to place the telephone calls he requested "immediately upon request, or as soon as practicable." (Pen. Code, § 851.5, subd. (c); unless otherwise indicated, all further statutory references are to the Penal Code.)

At the hearing on the voluntariness of the confession it was not disputed that defendant had requested three or more times to make calls to his friends. Nor was it disputed that if a violation of the statute had transpired it would be at the very least a factor to be considered by the trial court in determining whether the confession was voluntary. However the trial court found that no violation of section 851.5 had taken place. Apparently the trial court read section 851.5 as conferring no right to place calls if the officers complied with the time limits imposed by a superseded version of the statute (i.e., immediately upon booking or within three hours of arrest unless physically impossible). That is a misreading of section 851.5 which at all times here relevant provided: "(a) Immediately upon being booked, and, except where physically impossible, no later than three hours after arrest, an arrested person has the right to make at least two completed telephone calls, as described in subdivision (b). The arrested person shall be entitled to make at least two such calls at no expense if the calls are completed to telephone numbers within the local calling area. [¶] (b) At any police facility or place where an arrestee is detained, a sign containing the following information in bold block type shall be posted in a conspicuous place: [¶] That the arrestee has the right to free telephone calls within the local dialing area, or at his own expense if outside the local area, to two of the following: [¶] (1) An attorney of his choice or, if he has no funds, the public defender or other attorney assigned by the court to assist indigents, whose telephone number shall be posted. This phone call shall not be monitored, eavesdropped upon, or recorded. [¶] (2) A bail bondsman. [¶] (3) A relative or other person. [¶] (c) *These telephone calls shall be given immediately upon request, or as soon as practicable.* [¶] (d) This provision shall not abrogate a law enforcement officer's duty to advise a suspect of his right to counsel or of any other right. [¶] (e) Any public officer or employee who willfully deprives an arrested person of any right granted by this section is guilty of a misdemeanor." (Added by Stats. 1975, ch. 1200, § 2, p. 2966, italics added.)

Formerly section 851.5 had provided only: "(a) Any person arrested has, immediately after he is booked, and, except where physically impossible, no later than three hours after his arrest, the right to make, at his own expense, in the presence of a public officer or employee, at least two telephone calls from the police station or other place at which he is booked, one completed to the person called, who may be his attorney, employer, or a relative, the other completed to a bail bondsman. [¶] (b) Any public officer or employee who deprives an arrested person of the rights granted by this section is guilty of a misdemeanor." (Repealed by Stats. 1975, ch. 1200, § 1, p. 2966.)

The legislative history of the present version of section 851.5 demonstrates that one of the reasons for the new statute was to ensure "*that the calls may be made immediately upon being brought to a police facility rather than immediately after booking;* . . ." (Legislative Counsel's Dig. of Assem. Bill No. 1199, 2 Stats. 1975 (Reg. Sess.) Summary Dig., p. 325, italics added.) Thus, in the instant case a violation of the statute is established and at the very least the cause should be remanded to the trial court for a determination of whether these repeated violations affected the voluntariness of the confession. It should be noted that provisions strikingly similar to section 851.5 are enforced under the American Law Institute's Model Code of Pre-Arraignment Procedure by forbidding any use of statements taken

in substantial violation of the code. (See §§ 130.1 -150.2, pp. 27-66 (Official Draft, 1975).) However, since I would reverse on the basis of the defendant's right to remain silent, I express no opinion with respect to the appropriate remedy for the denial of defendant's statutory right to place the calls "immediately." (§ 851.5, subd. (c).)

It is also not necessary to determine whether defendant was also denied his right to prompt arraignment. Article I, section 14 of the California Constitution mandates that persons accused by felony complaint "be taken without unnecessary delay before a magistrate" in the county where the felony is triable. Section 825 requires that "[t]he defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; . . ." (Cf. *People* v. *Thompson* (1980) 27 Cal.3d 303, 329 [165 Cal.Rptr. 289, 611 P.2d 883].)