[No. F043820. Fifth Dist. Apr. 29, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
HARVEY LEE JACKSON, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II.B, III, IV, V, VI, and VII.

#### COUNSEL

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez and Mathew Chan, Deputy Attorneys General, for Plaintiff and Respondent.

#### OPINION

**WISEMAN, J.**—Harvey Lee Jackson, Jr. (defendant), was convicted of burglary, robbery, and receiving stolen property in connection with an incident in which he was discovered inside the house of a neighbor and

acquaintance. He argues that the court erred in excluding evidence relating to drug use by the victim and refusing to give a related jury instruction; that the burglary and robbery convictions were not supported by sufficient evidence; that juror misconduct entitled him to a new trial; that the court failed to give a required jury instruction regarding circumstantial evidence; and that his prison sentence and fines violated the Sixth Amendment as interpreted in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]. He attacks the fines on other grounds as well.

In the published part of this opinion, we reject defendant's argument that there was insufficient evidence of robbery because the victim did not know any property had been stolen until after defendant fled from the scene of the crime. In the unpublished part, we reject defendant's remaining arguments. We affirm the judgment.

The parties have pointed out several clerical errors in the abstract of judgment, which we order corrected.

## *FACTUAL AND PROCEDURAL HISTORIES*

The victim, defendant's acquaintance, went out for about an hour on the morning of July 14, 2002, and returned home to find defendant in his bedroom. The victim threw his keys at defendant, and defendant ran and hid in a closet. The victim pulled on the closet door, but defendant was holding onto the doorknob on the inside. Defendant then released the doorknob and sprang from the closet; the victim grabbed him and they fell together onto the bed, breaking it. Defendant rose and ran for the front door, dragging the victim, who retained his hold. Finding the front door closed, defendant headed for the back door, but the victim blocked his path. The victim then accused defendant of burglarizing his house on prior occasions. Defendant denied it and said they should go talk to the victim's neighbor across the street, who would exculpate defendant.

Defendant and the victim went outside to see the neighbor, who was working in his yard. At some point, the victim demanded to see the inside of defendant's backpack and fanny pack, and asked defendant to empty his pockets, which looked like they "were full of stuff." Defendant opened his backpack, revealing a pry bar. He refused to open the fanny pack or empty his pockets, and walked away as the neighbor looked on.

The victim called the police. He told the dispatcher that a watch and some other property had been taken. He told the responding officer where to find defendant's house. The officer went there, found defendant, searched him,

and took a watch from his pants pocket. Then the officer returned to the house and showed the watch to the victim, who identified it as a gift he had given to his girlfriend.

The district attorney filed an information charging three counts: 1) first degree burglary (Pen Code, §§ 459, 460, subd. (a)[1]) with a nonparticipant present (§ 667.5, subd. (c)(21)); 2) first degree robbery (§ 211); and 3) receiving stolen property (§ 496, subd. (a)). The information also alleged that defendant had previously been convicted of two serious or violent felonies within the meaning of the three strikes law. (§§ 667, 1170.12.)

At trial, the victim testified that he was acquainted with defendant and that defendant had been in his house six or seven times in the three to four years before the burglary, but had never been in any of the bedrooms and did not have permission to be in the house on July 14. He testified that he had been the victim of other burglaries earlier in the year but did not report these. After defendant left on July 14, the victim discovered for the first time that many items were missing, but believed that most of them were taken on July 4. He was out of town that day and returned on July 5 to find the gate to his yard pried open, but he did not notice any property missing then. He "blamed [defendant] for everything," but admitted that this was merely an assumption.

After the July 14 incident, the victim reported the disappearance of a large quantity of property to the police and filed a claim for it with his insurer. At trial, he described dozens of items worth thousands of dollars, including watches, other jewelry, cash, tools, electronic equipment, antiques, coin and stamp collections, firearms, ammunition, a boat motor, fishing gear, a lawn mower, and a spear gun. The date of loss he provided to the insurer was July 4, 2002. In explaining why he did not notice the loss of these items until July 14, the victim testified that at two bedrooms and 1,870 square feet, "[i]t's a big house . . . ." There was evidence that the victim was a collector of used goods that he bought and sold at yard sales, and that a large quantity of these goods was stored in the house.

A police officer and a police technician testified that a fingerprint matching one of defendant's was taken from a brass box in a dresser in one of the bedrooms.

The victim's girlfriend testified and identified the recovered watch as the one given to her by the victim. She said she had inadvertently left it at the victim's house. She also said she had the watch adjusted to fit her small wrist and tried it on in court to show that it fit.

---

[1] Subsequent statutory references are to the Penal Code.

The jury found defendant guilty as charged and found true the special allegation that a nonparticipant was present during the burglary. Defendant admitted his prior convictions. He filed a motion for a new trial based on juror misconduct, which the court denied. The court then struck one of the prior conviction allegations and sentenced defendant as a second striker. It imposed an aggregate term of 22 years, consisting of the upper term of six years for first degree burglary, doubled for the second strike, plus two enhancements of five years each for the prior convictions. Doubled upper term sentences were imposed for each of the remaining counts and stayed pursuant to section 654.

## *DISCUSSION*

I. *Evidence of victim's drug use*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Sufficient evidence of robbery and of burglary in a victim's presence*

Defendant argues that there was insufficient evidence to support his conviction of robbery or the jury's finding that the victim was present during the burglary. These arguments are based on two mistaken propositions of law.

### A. *Robbery*

■ The elements of robbery include taking another's property from the other's person or presence against his will through the use of force or fear. (§ 211.) Defendant contends that "the property transfer can't take place against the victim's will due to the application of force or fear unless the victim is aware there is a property transfer taking place or about to take place." Because it is undisputed that the victim did not know the watch or other property had been taken until after defendant fled, defendant argues, the evidence did not support a conviction of robbery.

■ Defendant's position is incorrect, for it is settled that a victim of robbery may be unconscious or even dead when the property is taken, so long as the defendant used force against the victim to take the property. (*People v. Frye* (1998) 18 Cal.4th 894, 956 [77 Cal. Rptr.2d 25, 959 P.2d 183] [murder victims were robbed where defendant formed intent to take their property, killed them, and then took it]; *People v. Dreas* (1984) 153 Cal.App.3d 623, 628 [200 Cal.Rptr. 586] [unconscious victim was robbed when defendant drugged him in order to take his property].) There is no requirement that the

---

[*]See footnote, *ante,* page 1326.

victim be aware that his property is being taken from his presence by force or fear. Defendant attempts to distinguish *Frye* and *Dreas* by pointing out that in those cases the defendants overcame the wills of the victims by killing and drugging them, with the purpose of taking their property afterward, while the victim was not killed or drugged here.

The significance of this distinction is unclear. Defendant's argument could be that robbery requires that a victim know his property is being taken *unless* the perpetrator purposely renders the victim incapable of knowing it. There is a rule that taking property without force from a person found unconscious, or extracting property stealthily and without force from a conscious person who remains unaware, is not robbery. " '[S]uch activities as rolling a drunk, picking a pocket or snatching a purse from an unsuspecting and unresisting victim [citation] may properly bring forth a felony count of larceny from the person [citation]; but, because of the lack of physical force involved, these actions will not support any robbery charge.' " (*People v. Kelley* (1990) 220 Cal.App.3d 1358, 1369 [269 Cal.Rptr. 900].) That is not what we have here.

Rather, this case presents the situation where defendant used force to take property from the victim's presence (he resisted the victim's attempts to stop him from fleeing with the watch in his pocket) but the victim did not know property was being taken. Defendant does not argue that the evidence of the struggle inside the victim's house did not show that defendant used force to escape with the watch. The Supreme Court of Washington discussed the same kind of situation in *State v. Larson* (Wash. 1962) 60 Wn.2d 833 [376 P.2d 537, 538]. Quoting Brill's Cyclopedia of Criminal Law, the court held that " '[i]f force is used . . . it makes no difference that [the victim] does not know that he is being robbed.' " Similarly, quoting Wharton's Criminal Law, the court opined that it was robbery " 'where the [victim] was seized by the cravat and forced against the wall, and when thus pinioned his watch was taken without his knowledge.' " (*Larson*, at p. 538.) In *Mitchell v. State* (Okla.Crim.App. 1965) 1965 OKCR 138 [408 P.2d 566, 571], likewise, the Oklahoma Court of Criminal Appeals applied "the rule that if the taking of property from the person of another is accomplished by force, although the victim does not know what is being done, it is, nevertheless, robbery." Although we have not found a similar California case, we know of no reason why the law would be different here.

B.–VII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1326.

## DISPOSITION

The judgment is affirmed. The abstract of judgment shall be corrected as set forth in part VII above.

Buckley, Acting P. J., and Cornell, J., concurred.

A petition for a rehearing was denied May 24, 2005 and on May 3, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 27, 2005.