Filed 6/16/21  P. v. Kalac CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C088713 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF182832) |
| v. | |
| MATTHEW ALLEN KALAC, | |
| Defendant and Appellant. | |

Defendant Matthew Allen Kalac was found inside a detached garage by the homeowner.  He and the homeowner struggled over a flashlight he had taken.  While defendant lost the struggle for the flashlight, he left with other property belonging to the homeowner.

1

Following a jury trial, defendant was convicted of second degree robbery (Pen. Code, §§ 211, 212.5)[1] and second degree burglary (§ 459) for this incident, and vehicle tampering (Veh. Code, § 10852) for another incident. The trial court sustained a prior prison term allegation (§ 667.5, subd. (b)), and sentenced defendant to a four-year state prison term.

On appeal, defendant contends there is insufficient evidence to support the robbery conviction, and the matter should be remanded pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and to determine whether he is entitled to mental health diversion pursuant to section 1001.36. In a supplemental brief, he contends the prison prior cannot stand in light of Senate Bill No. 136.

We find there is substantial evidence of robbery, *Dueñas* was wrongly decided, the section 1001.36 claim is forfeited, and any claim that counsel was ineffective in failing to seek mental health diversion must be made through a habeas corpus petition. Agreeing that the prison prior is invalid in light of Senate Bill No. 136, we shall remand with directions to strike the prison prior and resentence defendant, affirming the judgment in all other respects.

BACKGROUND[2]

*Scott G. (Counts 1 & 2)*

Scott G. lived in a West Sacramento home that had a detached two-car garage in the back. On May 4, 2018, at around 4:30 a.m., he was awakened by his dogs barking and running through the dog door. He got up and pointed a lit flashlight at the garage doors. When a flashlight from the garage shined back at him, Scott got his .22-caliber

---

[1] Undesignated statutory references are to the Penal Code.

[2] The People presented evidence of four separate acts of uncharged misconduct. We do not recount this evidence, as it is unnecessary to resolve the appeal or give context to the judgment.

rifle, banged on the garage door, and said, "I would recommend you get the hell out of here."

When nobody left, Scott entered the garage through the side door and found defendant wearing one of his Panama golf hats. Scott did not see a weapon on defendant. When Scott told defendant he needed to get out of there, defendant walked right by him and started to look around in the garage's back room.

Scott noticed items from his garage were stacked on a dolly as if defendant was preparing to roll them away. Tapping defendant on the shoulder with his rifle, Scott reiterated the command for defendant to leave. Defendant looked at Scott and casually walked out the side door, carrying one of Scott's flashlights with him.

Scott told defendant to give back the flashlight. Defendant replied the flashlight was his, not Scott's. Holding his rifle with one hand, Scott grabbed the flashlight with the other. Defendant and Scott struggled for the flashlight, going back and forth as each held on to it. Although defendant did not appear as if he wanted to fight, Scott was nonetheless cautious and fearful. He turned his rifle around so the butt could be used as a weapon; Scott thought defendant might use the flashlight as a weapon. Defendant resisted Scott's efforts to get the flashlight as he and Scott struggled with each other to wrench the flashlight out of the other's hand.

The struggle ended after 10 to 20 seconds with Scott overpowering defendant, who let go of the flashlight, which then fell to the ground. Defendant asked Scott how to get out; Scott pointed him to the back gate. Defendant, who seemed "out of it," slowly walked out.

Scott's significant other called the police, who began looking for defendant. When defendant was arrested later that day, officers recovered from him a flashlight, tire pressure gauge, and tire depth gauge which had been removed from Scott's garage.

*Daniel D. (Counts 3 & 4)*[3]

At around 6:00 a.m. that morning, Daniel D. was asleep in his West Sacramento home with his wife and daughter when his car alarm went off. His wife locked the car the night before. Daniel went out to the driveway, where he saw someone inside his car. He ran up to the car and shouted, "Hey, get out of the car, what are you doing?" Defendant was inside the car. His feet were on the driveway with his torso on the driver's seat; he did not respond to Daniel as he was rummaging through the interior. Daniel grabbed defendant from behind, wrapped him up, and pulled him out of the car. Defendant had a pill bottle in one hand; as Daniel pulled defendant out, they struggled over the bottle for a few seconds. Defendant, who appeared to be "out of it," let go of the pill bottle by the time he was out of the car. He then started jabbing Daniel, who put defendant on the ground.

The altercation lasted 30 to 45 seconds. Daniel's wife called the police, who arrested and searched defendant upon arrival. She determined anxiety medication was missing from the bottle in the car, and defendant had taken her jacket from the car as well.

*Defense*

West Sacramento Police Officer Matthew Montez did not find any burglary tools on defendant after he searched him pursuant to arrest following the incident at Daniel D.'s car. There were no burglary tools in the car, nor was there any sign of forced entry on the car. Daniel D. told him he could lock three of the car's doors and leave the driver's side door unlocked with a key fob.

---

[3]     Defendant was charged with robbery and second degree burglary for this incident. He was acquitted of robbery and convicted of vehicle tampering as a lesser included offense of burglary.

4

DISCUSSION

I

*Sufficient Evidence of Robbery*

Defendant contends there is insufficient evidence to support his robbery conviction. We disagree.

On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 572-573]; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) "It is settled that the crime of theft, whether divided by degree into grand theft or petty theft, is a lesser included offense of robbery. [Citation.] Robbery includes the added element of force or fear. [Citation.]" (*People v. DePriest* (2007) 42 Cal.4th 1, 50.) Additionally, "[a] theft or robbery remains in progress until the perpetrator has reached a place of temporary safety. [Citation.]" (*People v. Flynn* (2000) 77 Cal.App.4th 766, 772) Thus, a theft becomes a robbery if the defendant, having peacefully acquired the property, uses force or fear to retain or escape with it. (*People v. Gomez* (2008) 43 Cal.4th 249, 256.) "Fear" under section 211 includes "[t]he fear of an

5

unlawful injury to the person or property of the person robbed." (§ 212.) " 'To establish a robbery was committed by means of fear, the prosecution "must present evidence '. . . that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.' " ' [Citation.] Thus, the fear element is subjective in nature. [Citation.] However, the victim need not explicitly testify that he or she was afraid of injury where there is evidence from which it can be inferred that the victim was in fact afraid of injury. [Citation.]" (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 612.)

The force required to elevate a theft to a robbery is a force more than an incidental touching, beyond "just that quantum of force which is necessary to accomplish the mere seizing of the property." (*People v. Morales* (1975) 49 Cal.App.3d 134, 139.) "The degree of force is immaterial. [Citations.]" (*People v. Jones* (1992) 2 Cal.App.4th 867, 871.)

Defendant tried to leave the garage with the flashlight, and then struggled with Scott G. over the flashlight for 10 to 20 seconds. Although defendant lost the struggle for the flashlight, he was able to leave the garage with several of the victim's items after the unsuccessful attempt to take the flashlight. While Scott had a rifle, he did not try to use it as a firearm; he turned it around to use it as a club and never threatened to shoot defendant. Scott initially left the garage to get his rifle because he was afraid defendant could have a weapon or be dangerous. There is also evidence that Scott was elderly, as he testified that he was a veteran of the Vietnam War.[4]

From this, a jury could reasonably infer that the older man, Scott, was fearful of defendant, someone who broke into his garage at night and tried to take a flashlight away

---

[4]     According to the probation report, defendant was born in 1964. Even if Scott G. was 18 when the war ended in 1975, defendant was still appreciably younger than his victim.

6

by force. The jury could also infer that this fear induced Scott to allow defendant to leave the garage with his property.[5] Substantial evidence supports the robbery conviction.

## II

*Dueñas*

Defendant contends remand is required for an ability to pay hearing with respect to the restitution fine, and the court operations and conviction assessments. He cites in support *Dueñas, supra*, 30 Cal.App.5th 1157, which held that due process requires the trial court to stay execution of restitution fines, as well as court operations and conviction assessments, until it has held a hearing and determined the defendant has the present ability to pay.

We join the courts concluding *Dueñas* was wrongly decided and hold that defendant was not entitled to an ability to pay hearing for the restitution fine, as well as the conviction and operations assessments. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 322, review granted November 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060; *People v. Caceres* (2019) 39 Cal.App.5th 917, 920.) We therefore reject the contention.

## III

*Mental Health Diversion*

Effective June 27, 2018, section 1001.36 created a pretrial diversion program for a defendant suffering from a "mental disorder [that] was a significant factor in the commission of the charged offense" (§ 1001.36, subd. (b)(1)(B)), provided a series of requirements are satisfied. (*Id.*, subd. (b)(1)(A)-(F).) Where defendant qualifies for diversion, prosecution of the charged offense is postponed while defendant undergoes

---

[5] The fact that Scott may not have known defendant was leaving with his property is irrelevant. The victim's knowledge that he is being robbed when force or fear is used does not matter. (*People v. Jackson* (2005) 128 Cal.App.4th 1326, 1330-1331.)

mental health treatment. (*Id.*, subd. (c).) If a defendant performs "satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.*, subd. (e).) Defendant urges us to remand this matter so the trial court can determine his eligibility for pretrial diversion under section 1001.36. He asserts two arguments in support of this request: (1) section 1001.36 applies retroactively, and (2) he received ineffective assistance of counsel. Neither argument has merit.

Although section 1001.36 is retroactive (*People v. Frahs* (2020) 9 Cal.5th 618, 624), the retroactivity argument is misplaced.

Defendant committed his crimes on May 4, 2018, about seven weeks before section 1001.36 took effect. The information was filed on June 4, 2018. Defendant was arraigned on the information on June 6, 2018. At the July 23, 2018 hearing on in limine motions, the prosecutor mentioned that a possible mental defect or capacity defense had been mentioned at the disposition conference. Defense counsel said he would not ask any witnesses to offer opinions on defendant's diagnosis. The court then granted the prosecution's motion to preclude questioning relating to defendant's "mental health symptoms or mental health diagnosis." The jury selection began the following day, July 24, 2018. Defendant never requested a section 1001.36 hearing.

As a general rule, "a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court . . . ." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) The forfeiture doctrine is not absolute, however, as we are "generally not prohibited from reaching a question that has not been preserved for review by a party. [Citations.]" (*Ibid.*) But defendant does not ask us to reach a question that he failed to preserve for review or, for that matter, even ask us to correct a claimed error made by the trial court. Rather, he seeks remand to allow him to pursue a section 1001.36 pretrial diversion program that he did not pursue below, despite that the program was in place when he was

8

tried, convicted, and sentenced. Under these circumstances, we decline to overlook the forfeiture rule. (See, e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 375-376 [where the defendant failed to invite the trial court to exercise its discretion, he forfeited his right to raise the issue on appeal].)

This brings us to defendant's alternative argument, that he received ineffective assistance of counsel due to his counsel's apparent failure to seek pretrial diversion.

It is well established that to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's errors there is a reasonable probability that the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 693 [80 L.Ed.2d 674, 697] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) It is equally well established that "[i]t is particularly difficult to prevail on an appellate claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1009; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [habeas corpus is the more appropriate procedure to address an ineffective assistance of counsel claim because it may include evidence of an attorney's reasons for making the complained-of decision, which is outside the appellate record].) These rules preclude us from finding ineffective assistance of counsel here.

There is nothing in the record indicating why counsel did not request a section 1001.36 hearing. There is also insufficient evidence in the record to support a finding that defendant was reasonably likely to obtain mental health diversion had counsel filed a request for it pretrial.

Following the trial, defense counsel expressed doubts about defendant's competency and requested a section 1368 examination. At sentencing, defendant testified that he remembered both charged incidents "exactly", and there were times he drank so much he could not remember. At times he would take things and later question his reasons for taking the property. Defendant kind of knew he was stealing in the charged incidents, and he should not have done so in the first place. The court then suspended proceedings and ordered an evaluation pursuant to section 1368.

The examining psychologist noted defendant suffered a severe head injury in 1980 after driving a motorcycle 100 miles per hour. He was hospitalized at Atascadero State Hospital from April 16, 1996 to April 1997, and at Napa State Hospital from April 25, 1997 to his release on June 11, 1997. He was diagnosed with dementia at Napa; his medication was discontinued following an adverse reaction. He also had his grounds card removed periodically due to his inability to follow rules and regulations. The psychologist diagnosed defendant with alcohol use disorder, major or mild neurocognitive disorder due to traumatic brain injury, and antisocial traits. The psychologist found him competent to stand trial. He also found defendant likely to benefit from outpatient treatment but whether he would remain in treatment is "questionable especially since he reported that completing terms of parole and probation in the past have been difficult for him."

In denying probation, the court found defendant's mental condition affected his culpability, but it was "not satisfied that there is a high likelihood that Defendant would respond favorably to mental health treatment that would be required as a condition of probation." It found the mental health condition significantly reduced his culpability, and would have granted probation but for defendant's ineligibility.

While defendant has mental conditions, the record does not establish a reasonable probability that, "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to

10

mental health treatment." (§ 1001.36, subd. (b)(1)(C).) The expert's opinion shows defendant was less likely to comply and respond favorably to outpatient treatment, and there is no evidence in this record of his amenability to mental health treatment. The lack of evidence supporting this statutory requirement for diversion means defendant cannot satisfy his burden of proving either prong of *Strickland*. An inability to satisfy this requirement would give defense counsel a plausible reason to not request diversion. (See *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"].) Also, our inability to determine whether defendant would have prevailed at a section 1001.36 hearing means he has failed to establish prejudice under *Strickland*. Merely getting a section 1001.36 hearing does not lead to a different result under *Strickland* unless defendant gets diversion. His inability to show a reasonable probability of this result means he has not shown prejudice as defined in *Strickland*.

Since defendant cannot show ineffective assistance based on this appellate record, the forfeiture stands.

IV

*Senate Bill No. 136*

Defendant contends, and the Attorney General agrees, that recently enacted Senate Bill No. 136, which limits the prior offenses that qualify for a prior prison term enhancement, applies retroactively to his case. We agree.

On October 8, 2019, the Governor signed Senate Bill No. 136, which amended Penal Code section 667.5, effective January 1, 2020. (Stats. 2019, ch. 590, § 1.) Senate Bill No. 136 narrowed eligibility for the one-year prior prison term enhancement to those who have served a prior prison sentence for a sexually violent offense.

Defendant's prior prison term at issue was not for sexually violent offenses. Defendant is therefore entitled to the ameliorative benefit of the statute if Senate Bill

11

No. 136 is applied retroactively. We agree with the parties that the amendment to Senate Bill No. 136 should be applied retroactively in this case.

Whether a particular statute is intended to apply retroactively is a matter of statutory interpretation. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307 [noting " 'the role of a court is to determine the intent of the Legislature' "].) Generally speaking, new criminal legislation is presumed to apply prospectively unless the statute expressly declares a contrary intent. (§ 3.) However, where the Legislature has reduced punishment for criminal conduct, an inference arises under *In re Estrada* (1965) 63 Cal.2d 740, " 'that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations.]" (*Lara*, at p. 308.) "A new law mitigates or lessens punishment when it either mandates reduction of a sentence or grants a trial court the discretion to do so. [Citation.]" (*People v. Hurlic* (2018) 25 Cal.App.5th 50, 56.)

Senate Bill No. 136 narrowed who was eligible for a section 667.5, subdivision (b) prior prison term enhancement. There is nothing in the bill or its associated legislative history that indicates an intent that the court not apply this amendment to all individuals whose sentences are not yet final. Under these circumstances, we find that *In re Estrada*'s inference of retroactive application applies. (Accord, *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-342 [Senate Bill No. 136 applies retroactively to cases not yet final on appeal]; *People v. Jennings* (2019) 42 Cal.App.5th 664, 680-682 [same].) Accordingly, we will direct the trial court to strike defendant's prior prison term enhancements and "remand the matter for resentencing to allow the court to exercise its discretion in light of the changed circumstances." (*Jennings*, at p. 682.)

DISPOSITION

The matter is remanded to the trial court with directions to strike the prior prison term enhancement and to resentence defendant in accordance with this opinion.  In all other respects, the judgment is affirmed.

|  | /s/ |
|---|---|
|  | BLEASE, Acting P. J. |

We concur:

|  |
|---|
| /s/ |
| HULL, J. |

|  |
|---|
| /s/ |
| HOCH, J. |

13